JOHN F. MILLER COMPANY, INC. *vs.* GEORGE FICHERA
CONSTRUCTION CORPORATION & another.[1]

Suffolk.    March 20, 1979. — May 3, 1979.

Present: BROWN, GREANEY, & KASS, JJ.

*Contract,* Building contract, Public works.

Where a plumbing subcontractor on a housing construction project
    refused to proceed with installation of a waste piping system as
    called for by the plans and specifications after the architect for the
    project refused to consent to installation of a substitute system
    which would have entailed fundamental changes in the design and
    system prescribed by the specifications, the subcontractor was lia-
    ble in damages to the contractor for a two and one-half months'
    delay in the job. [496-498]
Because of the provisions of G. L. c. 149, § 44C, which entitled a plumb-
    ing subcontractor on a State-aided housing project to confine its
    attention to the plumbing section of the specifications, and business
    custom which would permit the subcontractor not to look outside
    of the plumbing section for toilet room accessories requirements,
    the contractor was not entitled to back charge the subcontractor for
    toilet room accessories listed in a different section of the specifica-
    tions. [498-500]

BILL IN EQUITY filed in the Superior Court on March 28,
1972.

The case was heard on a master's report by *Strogoff, J.,*
a District Court judge sitting under statutory authority.

*Robert J. Sherer (Frank M. Capezzera & Joseph J.
Ganem* with him) for the defendants.

---

[1] The Aetna Casualty and Surety Company.

*Sally A. Corwin (Joseph A. Pisarri* with her) for the plaintiff.

KASS, J. Factually, this case presents a typical complex of quarrels between a general contractor and a subcontractor. George Fichera Construction Corporation (contractor) was the general contractor of a State-aided project in Haverhill for housing elderly persons. John F. Miller Company, Inc. (subcontractor), was the plumbing subcontractor on that job. Many matters were in dispute before the master; two survive on appeal: (1) Was the contractor entitled to $9,168.55 from the subcontractor for the latter's delaying the work? and (2) Was the contractor entitled to back charge[2] the subcontractor for certain toilet room accessories which the latter refused to furnish and install?

The controversy was tried before a master whose report contained extensive findings. Mass.R.Civ.P. 53 (b), 365 Mass. 818 (1974), and (e), as amended, 367 Mass. 917 (1975). Although he never modified the master's report, the motion judge entered a judgment which varied materially from the ultimate and general findings of the master. This is a practice which the court below should make every effort to avoid. *Ryan* v. *Stavros,* 348 Mass. 251, 253 (1964). From the record we can determine that the judge struck that general finding of the master which concluded that the subcontractor had caused the contractor $9,168.55 in damages by delaying the job. We treat the master's report as having been adopted as thus modified. *Id.*

A master's subsidiary findings of fact in a case to be tried without a jury are binding upon us unless they are clearly erroneous, mutually inconsistent, contradictory or vitiated in view of the controlling law. *Selectmen of Hatfield* v. *Garvey,* 362 Mass. 821, 825 (1973). *Michelson* v. *Aronson,* 4 Mass. App. Ct. 182, 190 (1976). *Mechanics*

---

[2] Jargon of the construction business which means deducting from the amount of a contract the cost of curing an error or omission.

*Natl. Bank* v. *Gaucher, ante* 143, 144 (1979). We must then take these subsidiary findings, together with the inferences that ought to be drawn from them, and reach our own general and ultimate conclusions. *O'Brien* v. *Dwight*, 363 Mass. 256, 281-282 (1973). *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 283 (1976). *McNamara* v. *Westview Bldg. Corp.*, 4 Mass. App. Ct. 670, 671 (1976).

1. *Subcontractor's job delay responsibility.* The subcontractor submitted its bid on the assumption that it could substitute a waste piping system different from that called for by the plans and specifications. This was a premise the subcontractor chose not to share with the awarding authority at the time it submitted the bid, but raised only when the subcontract was awarded to it and after work was in progress. General Laws c. 30, § 39M(*b*), permits a supplier of material on public jobs to furnish an item equal to that named in the specifications. Section 39M(*e*), as amended by St. 1967, c. 535, §§ 4, 5, defines "material" as including any "article, assembly, system, or any component part thereof." The substitution which the subcontractor sought to make involved a change in the size, number and location of fittings, pipes and vents and the materials out of which they were made. Partitions and joints would have to be built and cut differently by the contractor to accommodate the substantive system. Indeed, the substitute waste system had the signal advantage of complying with the state plumbing code, whereas the system designed and specified by the architect apparently did not.[3] But, the system which the

---

[3] The subcontractor sought to excuse its refusal to proceed with the work on the ground that it could not be expected to install work which would have violated the state plumbing code and which might, therefore, expose the subcontractor to the sanctions of G. L. c. 142, § 16. We need not decide whether § 16 applies to a plumbing contractor performing work drawn and specified by an architect and subject to the provisions of G. L. c. 30, § 39I. The record does not disclose that the subcontractor ever notified the architect and the owner of any deviations in the specifications from applicable codes, as the general conditions of the subcontract required. In this case, the specified waste

subcontractor proposed was, as the master found, a "different animal." It was not an "item" which conformed "substantially, even with deviations, to the detailed requirements for the item in the said specifications." G. L. c. 30, § 39M(b), as amended by St. 1967, c. 535, §§ 4, 5. Far more than an item, the substitute proposal was a fairly fundamental change of the design and system prescribed by the specifications.

The general conditions of the plumbing subcontract provided that "no change in the Drawings, or Specification shall be made unless in pursuance of a written order from the Authority countersigned by the Architect and the Chairman or Director of the State Housing Board authorizing the . . . change." The architect for the project refused to approve a proposed change order unless it was supported by shop drawings, a cost analysis, and a credit for cost savings. Thwarted in securing consent to a change in specifications, the subcontractor nonetheless refused to proceed with the work as drawn and specified. Except as to trifling detail, parties are bound to the precise requirements of their contract. *Albre Marble & Tile Co.* v. *Goverman*, 353 Mass. 546, 550 (1968). The master found that the subcontractor's refusal to proceed was the proximate cause of two and one-half months' delay in the job.

Nothing in the record inclines us to fault the master's finding that the subcontractor's six-month delay in installing the rough plumbing caused the contractor two and one-half months' additional time on the job. That the subcontractor's alternate proposal might have been superior did not entitle it to ignore the specifications; that other events occurred which also delayed the job does not exonerate the subcontractor from liability for the delays

system could have been installed in accordance with the code without substituting an entirely different system. Moreover, the impasse on the job developed not out of a refusal by the owner to accede to a modification in specifications, but out of the subcontractor's refusal to give the credit to the contract price required by G. L. c. 30, § 39I.

498                                7 Mass. App. Ct. 494

John F. Miller Co., Inc. *v.* George Fichera Construction Corp.

fairly traceable to it. *Morgan* v. *Burlington*, 316 Mass. 413, 417 (1944). *Wes-Julian Constr. Corp.* v. *Commonwealth*, 351 Mass. 588, 594 (1967). *St. Germain & Son* v. *Taunton Redevelopment Authy.*, 4 Mass. App. Ct. 46, 48 (1976). The master could properly estimate the delay to the over-all project arising out of the subcontractor's inaction. *Carter Elec. Co.* v. *Travelers Indem. Co.*, 382 F.2d 567, 573-574 (10th Cir. 1967).

2. *The toilet room accessories back charge.* Both the bid and the governing subcontract referred to the work in § 15B of the specifications, which was captioned "Plumbing." That portion of § 15B of the specifications which described the scope of the work listed "Toilet room accessories" but no subparagraph in § 15B thereafter described toilet room accessories, although four items under the subparagraph captioned "Fixtures"— curtain rods, shower curtain tie-backs, towel bars and lavatory legs — would qualify as toilet room accessories. The specifications dealt with the rest of the toilet room accessories — medicine cabinets, toilet paper holders, toothbrush and tumbler holders, and the like — in § 10, captioned "Specialties." The subcontractor says it was not bound to comb the specifications for provisions potentially pertinent to it. Indeed it was not. But in the instant case the subcontractor need have made no more than a cursory examination of the table of contents in the specifications to find the toilet room accessories provision in § 10.

The test for resolving disputes of this kind is the degree of obviousness of the omission, error or discrepancy in the specifications. If the discrepancy is subtle, so that a person furnishing labor and materials, who examines the specifications reasonably conscientiously, might miss a requirement which is out of sequence or ineptly expressed, the burden of the error falls on the issuer of the specifications, usually the owner, or the person relying on them, as the contractor does in this case. *Mountain Home Contractors* v. *United States*, 425 F.2d 1260, 1264 (Ct. Cl.

1970). Where a contractor or a subcontractor is presented with an obvious omission, inconsistency or discrepancy, he should at least ask for clarification if he intends "to bridge the crevasse in his own favor." *Beacon Constr. Co. v. United States*, 314 F.2d 501, 504 (Ct. Cl. 1963). Sections of a construction contract, as of any other kind, ought to be construed to give a reasonable effect to each. *S. D. Shaw & Sons* v. *Joseph Rugo, Inc.*, 343 Mass. 635, 640 (1962).

The subcontractor teeters on the edge of the principle articulated above. While it was asked specifically to bid on section 15B, not on all plumbing requirements, it is hard to suppress the suspicion that the subcontractor intentionally examined the specifications wearing blinders. Nevertheless, two factors, one statutory and one factual, resolve the issue in the subcontractor's favor. The specifications were governed by G. L. c. 149, § 44C, as amended through St. 1964, c. 523, which provides that "specifications shall have *a separate section* for each of the following classes of work ... (13) plumbing; ... and (18) any other class of work for which the awarding authority deems it necessary or convenient to receive sub-bids" (emphasis supplied). All the plumbing requirements should have been in one section in the specifications, and a subcontractor in a State-aided project has somewhat greater justification for not looking outside the section dealing with his trade than would a subcontractor on a private job. The master found that the custom in the construction and plumbing industry varied as to what fits in the category of toilet room accessories and that a trade-line agreement between the plumbing and carpentry unions provided that the installation of certain toilet room accessories would be the work of each union. Evidence of business custom was admissible to resolve the ambiguity with respect to the duty of the plumbing subcontractor. *Hardware Specialties, Inc.* v. *Mishara Constr. Co.*, 2 Mass. App. Ct. 277, 279 (1974).

Taking into account the subcontractor's entitlement under G. L. c. 149, § 44C, to confine its attention to the plumbing section of the specifications and variations in business custom which would permit the subcontractor not to look elsewhere for toilet room accessories requirements, we conclude that we need not disturb the ultimate finding of the master, and the judgment impliedly adopting it, that the contractor was not entitled to back charge the subcontractor for the cost of the toilet room accessories listed in § 10C of the specifications.

The judgment is reversed, and a new judgment is to enter that the defendant George Fichera Construction Corporation recover of the plaintiff, John F. Miller Company, Inc., the sum of $913.59.[4]

*So ordered.*

---

[4] This is the net of the amounts found by the master due the contractor for various items (with the delay damages which had been subtracted by the court added back in) less the amounts for various items found by the master due the subcontractor.