Fremont-Smith, J.
The plaintiff, a miscellaneous metals subcontractor, Ryan Ironworks, Inc. (“Ryan”), brought this action against the defendant general contractor, J.F. White/PKF Mark III (“J.F. White”), and against Seaboard Surety Company (“Seaboard”), National Fire Insurance Company of Pittsburgh, PA (“National Fire”) and Aetna Casualty and Surety Company (“Aetna”),[1] seeking a declaratory judgment to the effect that structural steel framework to support masonry (“masonry support steel”) was not within the scope of the miscellaneous metal work as set forth under Section 05500 of the MWRA Deer Island Project, Contract No. 5745 specifications (the “Contract”) so that Ryan is entitled to additional compensation for providing such masonry support steel. J.F. White now moves, pursuant to Mass.R.Civ.P. 56, for summary judgment against Ryan, contending that the masonry support steel was included, pursuant to Section 05500 of the Contract within the scope of Ryan’s work as the miscellaneous metals subcontractor. J.F. White also filed a third-party Complaint against the Massachusetts Water Resources Authority (“MWRA”) seeking indemnification in the event that J.F. White was found to be liable to Ryan. Ryan has cross-moved for partial summary judgment on the issue of liability, on the ground that the masonry support steel was not included within the scope of its work under Section 05500 of the Contract. After hearing and consideration of the submissions of the parties, J.F. White’s motion for summary judgment is ALLOWED and Ryan’s motion for partial summary judgment is DENIED.
BACKGROUND
The following facts are not in dispute:
Pursuant to an order of the Federal District Court for Massachusetts, the Massachusetts Water Resources Authority (“MWRA”) became engaged in the design and construction of a waste water treatment plant at Deer Island, Boston Harbor, Massachusetts (the “Deer Island Project”). One component of the Deer Island Project is the construction of an On-Site Thermal Power Plant, including the construction of a cogeneration power plant to supply back-up electric power to the Deer Island facility (“MWRA Contract No. 5745” or the “Contract”).
The Contract was prepared and awarded in accordance with M.G.L.c. 149, §§44A-44J, which required, inter alia, that the MWRA solicit filed sub-bids[2] in a number of sub-trades, including miscellaneous metals. The MWRA, pursuant to M.G.L.c. 149, §44F, prepared and published a separate Section in the Contract for the miscellaneous metals subcontractor, Specification Section 05500-Miscellaneous Metals, and set forth the specifications for structural steel, which is not a filed sub-bid sub-trade, in Section 05200 of the Contract. The Contract also incorporated the American Institute of Steel Construction (“AISC”) Code of Standard Practice (the “Code”).
Ryan filed the lowest miscellaneous metals sub bid ($ 848,495.00) and was awarded the miscellaneous metals subcontract in accordance with Specification 05500, whereas J.F. White submitted the low general bid for the entire Deer Island Project and was awarded the General Contract by the MWRA. Ryan then entered into a written subcontract with J.F. White to perform the miscellaneous metal work as specified by Section 05500 of the Contract.
After the Contract was executed, Ryan submitted a schedule of values for its work, which schedule did not include any values for masomy support steel. On or about April 7, 1993, after reviewing the Contract *378 documents, J.F. White wrote to Ryan, indicating that, pursuant to Section 05500 and referenced diagrams S-25, S-26, S-27 and S-28, the miscellaneous metals subcontractor was responsible for furnishing the masonry support steel for the On-Site Thermal Power Plant. Ryan responded by letter, on or about April 16, 1993, maintaining that it was not responsible for the masoniy support steel, and demanded that J.F. White submit the dispute to the MWRA Construction Manager, ICF Kaiser Engineers of Massachusetts (the “CM”), whose function under the Contract included the settlement of scope of work disputes between the general contractor and a subcontractor.
As requested, J.F. White then submitted the scope of work dispute to the CM, who, after reviewing the submissions of the parties, on or about May 6, 1993, agreed with J.F. White that Ryan was responsible under the Contract specifications for the masoniy support steel. See Section 00700, Paragraph 8 (designating the CM as the initial interpreter of disputes under the Contract). Following the CM’s decision, Ryan wrote to J.F. White on or about May 24, 1993, protesting the decision and demanding a change order[3] for the fabrication and provision of the masonry support steel. J.F. White responded that it would not issue a change order in contravention of the CM’s decision and directed Ryan to proceed with the required masoniy support steel work, which Ryan proceeded to do under protest.
On or about May 27, 1993, J.F. White filed a claim on Ryan’s behalf with the MWRA’s Director of Construction (the “Engineer”) pursuant to Section 00700, Paragraph 16.4.1, which designates the Engineer as the final interpreter under the Contract. On or about August 25,1993, the Engineer informed Ryan and J.F. White that the MWRA would take no further action on the scope of work dispute, as J.F. White and the CM were in agreement that the masonry support steel was to be furnished, pursuant to the terms of the Contract, by the miscellaneous metals subcontractor, Ryan. As such, the MWRA found that there was no dispute pursuant to Section 00700, Paragraph 16.4.1 of the Contract. On or about February 3, 1994, Ryan filed this action against J.F. White and its sureties seeking: (1) a declaratory judgment to the effect that masonry support steel is not miscellaneous metals work pursuant to Section 05500 of the Contract; and (2) damages in the amount of $167,567.75 plus interest and costs to reimburse Ryan for the cost of providing the masoniy support steel.
DISCUSSION
This Court should grant summaiy judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summaiy judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and move assertions of disputed fact ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If both parties have moved for summaiy judgment and “there is no dispute [concerning] the salient facts” or if a case only involves a question of law, a court will grant summary judgment to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
J.F. White first asserts that there is no inconsistency in the Contract and notes that the scope of work dispute at issue here has been reviewed by the general contractor, J.F. White, the CM, and the Engineer, all of whom have confirmed the conclusion that the miscellaneous metals subcontractor is responsible for furnishing the masonry support steel. Even were an inconsistency or ambiguity under Section 05500 of the Contract to be found, moreover, J.F. White asserts that the burden was on Ryan, as a filed sub-trade sub-bidder, to seek clarification of any inconsistencies in the contract documents prior to submitting a bid on the miscellaneous metals subcontract. See Contract, Section 00100, Paragraphs 3.7 and 4.3.[4] The law is well settled, moreover, that “[w]here a contractor or a subcontractor is presented with an obvious omission, inconsistency or discrepancy, he should at least ask for clarification if he intends to bridge the crevasse in his favor.” John F. Miller Co., Inc. v. George Fichera Construction Corp., 7 Mass.App.Ct. 494, 499 (1979) (quoting Beacon Constr. Co. v. United States, 314 F. 2d 501, 504 (Ct. Cl. 1963). Ryan admits that it was under a duty to seek clarification of any ambiguous contract terms, but contends that under a fair reading of the Contract, it unambiguously assigns provision of the masonry support steel to the structural steel subcontractor. Where there is no obvious inconsistency or ambiguity in the contract documents, Ryan asserts that “the burden of error falls on the issuer of the specifications. . .’ ” Richardson Elec. Co. v. Peter Francese & Son, Inc., 21 Mass.App.Ct. 47, 52 (1985) (quoting John F. Miller Co. v. George Fichera Construction Corp., 7 Mass.App.Ct. 494, 499 (1979)).
Here, however, the Court finds that the contract documents are obviously inconsistent and/or ambiguous as to whether the masonry support steel was to *379 be supplied by the Miscellaneous Metals subcontractor. On the one hand, Section 05500 references structural diagrams S-l to S-44 as well as numerous architectural drawings, which indicate that the Miscellaneous Metals subcontractor was to be responsible for all of the referenced diagrams. Also, Section 05500 Paragraph 1.01(C)(4)[5] requires the Miscellaneous Metals subcontractor to furnish “steel shapes . . . required to connect the masonry work to the building structural frame,” whereas Contract Section 04200-Masonry contains numerous references to structural steel. On the other hand, diagrams S-25, S-26, S-27 and S-28 are titled “Masonry Support Elevations; Details and Sections; STRUCTURAL," (emphasis added) which Ryan argues is an indication that the masonry support steel was to be supplied by the structural steel subcontractor.
Where, as here, there is an obvious ambiguity in the contract documents as to the scope of the miscellaneous metals subcontractor’s work in regard to the masonry support steel, Ryan was obligated, pursuant to both Section 00100, Paragraphs 3.7 and 4.3, and John F. Miller Co., Inc. v. George Fichera Construction Corp., supra, to notify the MWRA of any perceived inconsistency or ambiguity prior to the submission of its bid. By failing to raise any question about the scope of the work for which the miscellaneous metals subcontractor was responsible under the Contract, Ryan waived any right to object and is bound by the adverse determination of the CM pursuant to paragraph 9.8 of Section 00700.[6]
ORDER
Accordingly, J.F. White’s motion for summary judgment is ALLOWED, the third-party Complaint against the MWRA is dismissed, and Ryan’s cross-motion for partial summary judgment is DENIED. Judgment shall enter for the defendants.

 bt is undisputed that the defendants Seaboard, National Union and Aetna, are the sureties on J.F. White’s payment bond, which was provided, in accordance with M.G.L.c. 149, §29, to guarantee payment of all labor and materials delivered at the Deer Island Project.

 The general contractor is required to sub-contract with the successful sub-bidder under this statutory procedure.

 In accordance with Section 00700 of Contract No. 5745, a change order is a written instrument which when duly executed by the Authority [MWRA] amends the contract documents to provide for changes in the work and/or in contract price or contract time.

 Section 00100 (entitled Instructions to Bidders), paragraphs 3.7 and 4.3, require that any sub-bidder submit questions or requests for clarification in writing prior to the submission of a bid. Ryan does not dispute these requirements, but contends that no ambiguity exists in the contract documents.

 Section 05500, Paragraph 1.01(C)(4) provides:
C. Items furnished by Miscellaneous Metals subcontractor and installed by others:
4. Steel shapes such as angle plates, straps, tees, and brackets required to connect masonry work to the building structural frame.

 The Court does not reach the further question whether Ryan’s failure to object within twenty-one (21) days to the Engineer’s decision also constituted a waiver pursuant to Paragraph 16.4.1 of Section 00700, which requires a contractor to appeal any adverse decision of the Engineer within twenty-one (21) days of the decision.