Donohue, J.
The plaintiff in this action, AB & Palumbo Electrical Contractors (“Palumbo”), an electrical subcontractor, alleges that the defendant City of Worcester (“the City”), acting as general contractor on the renovation and construction of a public school, breached the terms of the subcontract when it refused to pay for work completed, but allegedly not included, in the contract’s specifications. The plaintiff moved for summary judgment, requesting declaratory judgment pursuant to G.L.c. 231A on the issue of breach and for its claim of unfair and deceptive acts and practices against the City. The City opposed the motion and *183 cross-moved for summary judgment in its favor on all claims. Defendant Royal Steam Heater (“Royal Steam”) also opposed Palumbo's motion for summary judgment and cross-moved for summary judgment on any claims against it. For the following reasons, the plaintiffs motion for summary judgment is DENIED, the City’s motion for summary judgment is DENIED in part and ALLOWED in part, and Royal Steam’s motion for summary judgment is DENIED.
BACKGROUND
This dispute involves the construction and renovation of the Forest Grove Middle School in Worcester. Because Forest Grove is a public school, the project must be bid according to G.L.c. 149, §44. As the awarding authority on the project, prior to soliciting bids from any prospective general contractors or subcontractors pursuant to G.L.c. 149, §44B, Worcester prepared the project specifications. Palumbo submitted a sub-bid for the electrical work under Division 16100 and was subsequently awarded a subcontract to furnish $1,477,756.00 of electrical labor and material for the project. Royal Steam submitted a sub-bid for the heating, ventilation and air conditioning (“HVAC”) work under Division 15600 and was subsequently awarded a subcontract to furnish $2,345,000.00 of HVAC labor and materials for the project. Both subcontractors filed the bids directly with the City, which the City then opened and provided to the bidders for the project’s general contracting work. John T. Callahan & Sons (“Callahan”) was awarded the general contract for the project.
The original specifications for the Division 16100 section were issued in February 2000 and contained a section, 1.05(E)(2), which stated the following:
[M]otors and all electro-mechanical systems and equipment will be furnished, set in place, installed, wired, and tested under other Sections.
On or about March 3, 2000, Stephen O’Day, an estimator for Palumbo contacted Steve Smith at RES Engineering, Inc., the firm that drafted the specifica- and served as a resource to the architect on the project, seeking clarification of that language and sections of the specifications. Smith discussed questions with other members of the project at and drafted a response.
In May of 2001, Palumbo became aware that it was expected to complete certain wiring to the HVAC equipment that it believed was not included in its scope of work. The disputed wiring is the electrical power wiring from the main electrical panel board, where electrical current enters the building, to the disconnect switches mounted on or adjacent to the various HVAC equipment Royal installed throughout the building. Palumbo proceeded with the disputed wiring under protest and now claims that the City owes it compensation for what it considers to be extra work on the project under the contract documents.
DISCUSSION
I. Declaratory Judgment
Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). At bar, each party contends that, because its suggested interpretation of the contract language is unarguably correct, there are no material facts in dispute. Accordingly, the parties say, the underlying contract claim may be resolved by this court as a matter of law. See USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989) (where material facts are not in dispute, interpretation of contract is question of law for the court). The court is not persuaded, however, that the parties’ suggestions as to the interpretation of the Division 16100 project specifications can be determined without resolving issues of fact.
Where the wording of a contract is unambiguous, the agreement must be enforced according to its terms. See In re Biotech Corp., 186 F.3d 1356 (D.Mass. 1999). A party’s mere claim of ambiguity may not defeat a motion for summary judgment “if the documents do not reflect ambiguity on the point in question, and the party resisting summary judgment adduces no evidence of ambiguity.” US Trust v. Henley Warren Mgt., Inc., 40 Mass.App.Ct. 337, 343 (1996). Thus, where the language of a contract is clear and unambiguous, summary judgment is an appropriate vehicle for judicial interpretation because the court interpret the meaning of the contract as a matter law without resort to extrinsic evidence or determinations of fact. ER Holdings, Inc. v. Norton Co., 735 F.Sup. 1094, 1097 (D.Mass. 1990). On the other hand, the contract language is indeed ambiguous, a finder must resolve the ambiguity by considering factual evidence offered by the parties to support differing interpretations. Commercial Union Ins. v. Boston Edison Co., 412 Mass. 545, 557 (1992); also Trafton v. Custeau, 338 Mass. 305, 307-08 In such circumstances, summary judgment is inappropriate.
The test for resolving disputes as to which party the blame for a construction contract’s ambiguis the degree of obviousness of the omission, error, discrepancy in the specifications. John F. Miller Co., v. George Fichera Construction Corp., 7 Mass.App.Ct. 494, 498-99 (1979). Thus, if the discrepis subtle, so that a subcontractor who examines specifications reasonably conscientiously might a requirement which is out of sequence or ineptly expressed, the burden of the error falls on the issuer the specifications. Id. Conversely, a subcontractor *184 who is presented with an obvious omission, inconsistency or discrepancy is required to ask for clarification prior to bidding "if he intends to bridge the crevasse in his favor.” Id.
Relevant Sections of the Specifications
The original specifications for the Division 16100 electrical section were issued in February 2000. Paragraph 1.04, section D on page 16100-3 of the specifications pertains to the scope of the electrical subcontractors work and reads, in relevant part, as follows:
(D) Description of Work
A. Perform work and provide material and equipment as shown on Drawings and/or as specified and/or indicated in this Section of the Specifications. Completely coordinate work of this Section with work of other trades and provide a complete and fully functional installation.
D. Work shall include, but not be limited to the following:
(1) Main primary and secondary electrical services. (5) secondary service conduits and cables, and
(65) Electrical connections to HVAC and plumbing equipment, kitchen equipment, computer equipment, and other equipment provided under other sections or by Owner.
Section 16100 also contains two paragraphs in section 1.05 entitled “Related Work,” which state the following:
E(l) — Starters and safety disconnect switches will be furnished, installed and wired to the motors under other Sections.
E(2) — [Mlotors and all electro-mechanical systems and equipment will be furnished, set in place, installed, wired, and tested under other Sections.
On or about March 9, 2000, the Office of Michael Rosenfeld, the architect, issued “Addendum 2,” which was intended to clarify the language of 16100 §1.05 (E)(1) and (E)(2) to read:
E(l) — Starters and safety disconnect switches under Division 15 will be furnished, installed, and wired to the motors under Division 15. Starters, disconnect switches, and related overcurrent devices for all other equipment shall be furnished, installed, and wired under this Section, as shown on the Drawings.
E(2) — Motors and all Electrical Mechanical systems and equipment under Division 15 will be furnished, set in place, installed, wired, and tested under Division 15.
Business Custom
Here, Palumbo attempted to “bridge the crevasse” in its own favor by making inquiry in the first instance when it had questions as to the scope of its work under the 16100 specifications. The project engineer and architect, to whom the questions were referred, produced a response that they felt clarified an already clear directive. The clarity of that response, contained in Addendum 2, or whether the response further obscured the issue, is at the core of the dispute. Palumbo is adamant that the response unequivocally directs the 15600 subcontractor to supply and install the disputed wiring; the City, its engineer, architect, and Royal, the Division 15600 subcontractor, are equally unyielding in their conviction that Addendum 2 clearly assigns the disputed work to Palumbo.
Evidence of business custom is generally admissible to determine whether an ambiguity, with respect to the duty of a subcontractor, is subtle or glaring. See John F. Miller Co., Inc. v. George Fichera Construction Corp., supra; Hardware Specialties, Inc. v. Mishara Construction Co., 2 Mass.App.Ct. 277, 279 (1974). The court, however, has been presented with conflicting evidence as to what constitutes custom in the electrical and HVAC industry.
Palumbo submitted the affidavit of its owner and president Paul Palumbo, who has been an electrician for 30 years, 15 of which he has done so through his electrical contracting company. The affidavit states in relevant part:
During the past 15 years, AB & Palumbo has bid more than 500 public projects, including schools, fire stations and so forth.
I have attached hereto as Exhibit B some exemplars of bid documents for other electrical bids that demonstrate that engineers who intend to divide wiring between Division 15 and Division 16 contractors explicitly break down the responsibilities of each ... It is my understanding that Steve Smith from RES has testified that Division 15 contractors either have electricians on staff to wire equipment, or they include a sub bid from an outside electrician. There is nothing unusual in this practice.
Royal Steam also submitted an affidavit from its vice president, Keith Dembrek, in support of what it and the City of Worcester contend to be the standard business practice in the area of electrical mechanical systems:
The power wiring Palumbo performed under protest, which runs from the equipment disconnect switch back to the main electrical panel board, requires running electrical conduit within walls and ceilings for distances ranging from 50 feet to 300 feet. It is not the custom or practice in Massachusetts for the HVAC contractor to perform this type of electrical power wiring. In the hundred (sic) of HVAC projects which I have bid and performed, this electrical power wiring has never been assigned to the HVAC subcontractor.
Because the factor of business custom is critical to the inquiry of whether the responses in Addendum 2 contain any ambiguity, and if so, whether it is subtle *185 or glaring, so as to shift the burden of inquiry, and the court is presented with conflicting statements, summary judgment is inappropriate as declaratory judgment on this issue.
II. G.L.c. 93A
Palumbo alleges that the City’s refusal to pay them for the work done under the contract constitutes an unfair and deceptive trade practice, invoking liability under G.L.c. 93A. Chapter 93A contains no explicit indication that governmental entities are to be liable under its provisions. United States Leasing Co. v. Chicopee, 402 Mass. 228, 232 (1988). “There are compelling reasons for excluding a municipality from 93A liability for punitive damages.” Hyppolite v. City of Boston, 1 Mass. L. Rptr. 31 (June 23, 1993). The court need not determine whether a municipality is subject to liability under Chapter 93A, because here the City was not engaged in “trade or commerce” when it contracted to build and renovate a public school.
Chapter 93A prohibits unfair and deceptive acts or practices in the conduct of any “trade or commerce.” G.L.c. 93A, §2(a). To determine whether a certain organization or entity is engaged in trade or commerce for 93A purposes, the court “needs to look at the particular circumstances to determine whether the acts complained of were committed in a business context.” Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 492-93 (1986). The City of Worcester was acting in its capacity as a governmental entity and building a school is not part of the City’s “commercial activities with regard to consumers, competitors or other business persons.” Manning v. Zuckerman, 388 Mass. 8, 13 (1983). Accordingly, the City is entitled to summary judgment on Palumbo’s claim under 93A.
III. Summary Judgment— Royal Steam[1]
Palumbo’s complaint contains no specific allegations against either Royal Steam or Callahan, but included them as defendants in its bid for declaratory relief. See G.L.c. 231A, §8. Pursuant to 231 A, §8, “when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration.”
Royal Steam has moved for summary judgment in its favor on all claims against it, arguing that the disputed wiring has no effect on its subcontract for the project and that its own specifications were clear in that it did not include the power wiring for the electromechanical equipment. As it may be a necessary party to the dispute, Royal Steam’s motion for summary judgment is denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
1)the plaintiff, AB & Palumbo Electrical Contractors, Inc.’s motion for summary judgment is DENIED;
2) it is further ORDERED that the City of Worcester’s motion for summary judgment is ALLOWED with respect to the claim for unfair and deceptive trade practices under 93A and DENIED in all other respects;
3) it is further ORDERED that Royal Steam Heater’s motion for summary judgment is DENIED.

Callahan responded to Palumbo’s motion for summary judgment, arguing that it played no role in preparing or reviewing the project specifications that form the basis for the dispute and should be excluded from liability. Callahan, however, did not cross-move for summary judgment.