NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-941

AMP ELECTRICAL, INC.

vs.

W.M. SCHULTZ CONSTRUCTION, INC. & another;[1]
TOWN OF WEST SPRINGFIELD, third-party defendant.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, AMP Electrical, Inc. (AMP), appeals from a summary judgment dismissing its complaint against the defendants, W.M. Schultz Construction, Inc. (Schultz), and Endurance Assurance Corporation (Endurance). We affirm.[2]

Background. We summarize the undisputed material facts on the summary judgment record, reserving certain facts for later

_____

[1] Endurance Assurance Corporation.

[2] We note that Schultz brought a third-party complaint against the town of West Springfield, which was also dismissed on summary judgment. AMP's appeal does not raise any separate issues regarding the dismissal of Schultz's third-party complaint.

discussion.  The town of West Springfield (town) is the owner of a public construction project identified as Wastewater Pumping Station Improvements (project).  The town's project engineer drafted plans and specifications for public bid by general contractors and subbid contractors pursuant to G. L. c. 149, § 44F, for the project.

Schultz was awarded the general construction contract for the project.[3]  Thereafter, the town's project engineer held electrical subcontractor bid meetings, which AMP attended prior to filing its subcontractor bid.  At the meetings, the town distributed the project's specifications and drawings to the prospective electrical subcontractors.  The town informed prospective subcontractors of project updates by releasing addenda to them during the prebidding process, some of which were in response to questions raised by the prospective subcontractors.[4]

As relevant here, the town issued Addendum No. 2 on March 19, 2018, which included the following question and response:

> Question 15: "Who is responsible for excavation and backfill of underground electrical conduits?"

---

[3] Subsequently, the town and Schultz entered into a written contract naming Schultz as the principal and Endurance as the surety.  Endurance issued Schultz a payment bond for the project.

[4] AMP does not dispute that it received Addendum Nos. 2 and 3 prior to filing its subcontract bid.

Response: "The electrical sub-bidder is responsible for this work."

The town issued Addendum No. 3 on March 26, 2018, and it, among other things, replaced Drawing Sheet E-401 with Sheet E-401. The revised Sheet E-401 provided additional trench details regarding the excavation and backfill of underground electrical conduits for the project.

On March 29, 2018, AMP filed its electrical subcontractor bid; it was the lowest subbidder. On July 18, 2018, Schultz and AMP entered into a written contract (subcontract) whereby Schultz agreed to pay AMP $1,800,000 for "all work specified in Division 16 of the specifications for Electrical," "the plans referred to therein," and Addendum Nos. 2 and 3.[5]

On June 26, 2019, AMP submitted a change order to Schultz requesting an increase in price in the amount of $88,730.70. Among other things, AMP sought the increase for "[e]xcavation and concrete easement" and "[b]ackfilling and compacting trench and affected areas [a]sphalt patching." In short, AMP believed the subcontract did not include excavation and backfilling work and thus, requested that it be compensated for that additional work. The town's project engineer rejected AMP's request, stating that Addendum Nos. 2 and 3 clarified that the work AMP

---

[5] Division 16 described the basic electrical requirements for the project.

3

now claims as extra was part of the electrical subbidder's responsibility.  Ultimately, on August 25, 2019, AMP informed Schultz that it would proceed with the excavation and backfilling work under protest and it provided an updated change order (PCO #6) for the amount of $83,490.15.  Schultz rejected AMP's request for a change order and acknowledged that AMP would proceed with the work under protest.

In May 2021, after Schultz failed to pay AMP for the work it completed pursuant to PCO #6, AMP filed a complaint alleging two counts against Schultz:  breach of contract and unfair and deceptive practices in violation of G. L. c. 93A, §§ 2 & 11.[6] The complaint also sought recovery on a payment bond pursuant to G. L. c. 149, § 29, from Endurance.  The defendants moved for summary judgment on all counts.  AMP cross-moved for summary judgment on the breach of contract and payment bond claims.  The judge allowed the defendants' motion for summary judgment and denied AMP's cross motion for summary judgment.  AMP timely appealed from the summary judgment.

---

[6] AMP's complaint alleged breach of contract for both (1) Schultz's failure to pay for the work it completed pursuant to PCO #6 and (2) unpaid retainage.  However, between the filing of the complaint and the judge's summary judgment decision, AMP received payment for the retainage.  Thus, this decision only addresses the remaining breach of contract claim concerning the work completed pursuant to PCO #6.

4

Discussion.  On appeal, AMP asserts that the judge erred in granting the defendants' motion for summary judgment.  We review the grant of summary judgment de novo.  See Le Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 149 (2023).  Where, as here, the parties filed cross motions for summary judgment, we view the evidence in the light most favorable to the party whose motion was denied.  See Smiley First, LLC v. Department of Transp., 492 Mass. 103, 108 (2023).  Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713 n.2 (1991).  We discern no error in the judge's grant of summary judgment in the defendants' favor.

On appeal, AMP asserts that it was only required to complete the work designated in Division 16 of the subcontract.  AMP relies on language in G. L. c. 149, § 44F, and insists that because the excavation and backfilling work described in Addendum Nos. 2 and 3 was "neither a 'specification' nor a contract term" and "was not directed to the electrical subbidder in particular," AMP was not required to complete that work.

The judge determined that "Addendum No. 2 clarified that the electrical subcontractor is responsible for all backfilling and excavating."  Further, the judge concluded that "[t]he contract documents made clear that AMP was required to excavate

5

and backfill underground electrical conduits."  We discern no error in the judge's determination.

As relevant here, G. L. c. 149, § 44F states,

"[e]very contract subject to [G. L. c. 149, § 44A] shall include specifications . . . .  Such specifications shall have a separate section for each of the following classes of work if in the estimate of the awarding authority such class of work will exceed $25,000: . . . (o) electrical work, . . . .  Each separate section in the specifications . . . shall specify by number each sheet of plans showing work to be done by the subcontractor under such section, . . . .  Each class of work set forth in a separate section of the specifications pursuant to this section shall be a sub-trade designated in the appropriate category of the general bid form and shall be the matter of subcontract made on the basis of the sub-bids."

G. L. c. 149, § 44F (1) (a).  This language requires each class of work to be listed in separate sections of the specifications, but those specifications incorporate "number[ed] sheet[s] of plans."  Id.  Here, Division 16, in listing the electrical "[w]ork to be done," referenced Sheet E-401.  That sheet, as amended by Addendum 3, showed the requirements to provide a concrete encased ductbank thirty-six inches below grade and to backfill the resulting trench.  Nothing in G. L. c. 149, § 44F prohibits an awarding authority from clarifying a class of work in addenda, as AMP suggests it does.  Indeed, during the prebidding process, questions arise and clarifications must be provided, and that is what occurred here.  Here, the town provided clarification in the form of Addendum Nos. 2 and 3, both of which AMP received before it submitted its bid, and

6

AMP's bid was in response to the specifications and supplemental documents, including the addenda.

AMP acknowledges that it received notice of Addendum Nos. 2 and 3, yet insists that excavation and backfilling are not customary electrical work, and thus, are the contractor's responsibility.  However, AMP did not proffer any evidence to support this assertion on summary judgment.  Contrast John F. Miller Co. v. George Fichera Constr. Corp., 7 Mass. App. Ct. 494, 499 (1979) (court permitted evidence of business custom in construction and plumbing industry to resolve ambiguity with respect to plumbing subcontractor's duty to install certain toilet room accessories).  Because no such evidence was proffered here, our analysis focuses on the language of the contract before us.[7]

AMP was on sufficient notice that its subcontract included the work it now claims was extra.  AMP signed the subcontract which stated that AMP "agree[d] to furnish all labor and materials required for the completion of all work specified in Division 16 of the specifications for Electrical and the plans

---

[7] At oral argument, AMP maintained that the town engineer's suggestion that AMP could "sub out" the excavation and backfilling work signaled that such work was not customary electrical work.  However, the affidavit from AMP's president does not sufficiently address the custom of the electrical industry.  Without a sufficient affidavit or other evidence, we remain unpersuaded that there was a genuine issue of material fact barring summary judgment.

7

referred to therein and Addenda . . . No. 2 dated 3/19/18, and No. 3 dated 3/26/18."  See John F. Miller Co., 7 Mass. App. Ct. at 499 ("Sections of a construction contract, as of any other kind, ought to be construed to give a reasonable effect to each").  Thus, the subcontract clearly included the excavation and backfilling work as described in Addendum Nos. 2 and 3.  Additionally, the "E" in Sheet E-401 from Addendum No. 3 stands for "electrical."  Such a designation at the very least signaled to AMP that it should review the update because it contained electrical work therein.

AMP was on notice of Addendum Nos. 2 and 3's requirements when it submitted its bid; any confusion it may have had regarding whether the excavation and backfilling work were its duties should have been resolved by AMP clarifying such.  See John F. Miller Co., 7 Mass. App. Ct. at 498.  Even reviewing the evidence in the light most favorable to AMP, we discern no error in the judge's determination that the subcontract included the excavation and backfilling work.[8]  Accordingly, where all of AMP's claims turned on its allegation that the subcontract did

_____

[8] We pause to note that, as a public policy matter, parties to a construction contract must be able to confidently rely upon project updates communicated via addenda and other similar forms.  It would be unworkable and inefficient if the entirety of a project's specifications were to be updated each time a question arose.

not include the excavation and backfilling work, summary judgment properly entered in favor of the defendants.[9]

_Judgment affirmed._

By the Court (Blake, C.J.,
    Sacks & D'Angelo, JJ.[10]),

_Paul Little_

Clerk

Entered:   July 31, 2025.

---

[9] The defendants and town seek appellate attorney's fees and double costs, pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), on the ground that AMP's appeal is frivolous. Considering the subcontract's language and totality of the other circumstances, we agree that AMP's appeal is frivolous and therefore an award of fees is appropriate.  Pursuant to Mass. R. A. P. 26 (a), as appearing in 481 Mass. 1655 (2019), single costs will be awarded to the defendants and town.  Consistent with the requirements of Fabre v. Walton, 441 Mass. 9, 10 (2004), the defendants and town may file a request for appellate attorney's fees and single costs, with supporting documentation, within fourteen days of the issuance of the decision in this case.  AMP shall have fourteen days thereafter within which to respond.  See id.

[10] The panelists are listed in order of seniority.