NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1021

COSTA BROTHERS MASONRY, INC.

vs.

TOWN OF HINGHAM & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Costa Brothers Masonry, Inc. (Costa), filed a complaint in the Superior Court seeking declaratory relief pursuant to G. L. c. 231A, § 1, against the defendants town of Hingham (town), Colantonio, Inc. (Colantonio), and Kaestle Boos Associates, Inc. (Kaestle). Costa claimed that the defendants violated the public bid statute, G. L. c. 149, § 44F (1) (a), by requiring it to perform work not specified in the town's advertisement for bid for a public construction project known as the "New Public Safety Facility" (the project). The disputed work involved the installation of stone veneer at the site walls and an entry sign, granite cap, and cast stone. The town and

---

[1] Kaestle Boos Associates, Inc., and Colantonio Inc.

Kaestle filed motions to dismiss pursuant to Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974), and Colantonio filed a motion for judgment on the pleadings pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).  The judge allowed all three motions and declared that Costa "is responsible for performing the Site Work under its subcontract."

We affirm the dismissal of Costa's claim against Kaestle because there is no "actual controversy" between the two companies within the meaning of G. L. c. 231A.  Because the record does not include key documents referenced in the subcontract between Colantonio and Costa, however, we are unable to affirm so much of the judgment as dismissed the claims against the town and Colantonio, and we therefore remand for further proceedings on those claims consistent with this memorandum and order.

Background.  After contracting with Kaestle, an architectural firm, to prepare plans and specifications for the project, the town solicited bids in January 2023.  In addition to bids for general contractor, the town solicited "filed sub-bids" for specific classes of work, including masonry.  Its solicitation directed potential bidders to "become fully acquainted with conditions as they exist, and thoroughly examine the Contract Documents" and cautioned that a bidder's failure

2

"to visit the site and to examine the Contract Documents shall in no way relieve the bidder from any obligation with regard to the bid as submitted."  The deadline for filed subbids was April 13, 2023.

In the project manual and specifications, the masonry scope was specified under Division 04, which listed the following specifications:

```
04 00 01  MASONRY FILED SUB BID**
04 20 00  UNIT MASONRY** (included in FSB 04 00 01)
04 72 00  CAST STONE MASONRY** (included in FSB 04 00 01)
```

The masonry specifications included, in Section 1.4, a "Description of Work," which stated that the work was shown on a series of listed drawings.  The drawings themselves are not included in our record.  Section 1.4 further stated that the filed subcontractor "shall also examine all other Drawings and all other Sections of the Specifications for coordination requirements therein affecting the Work of this Section, not just those pertaining to this Sub-trade."  Between the solicitation and bid submission deadline, Kaestle issued three addenda to the contract documents for subbidders to rely on.

Costa was the lowest responsible and eligible subbidder for the masonry work.  It entered into a subcontract with Colantonio, the general contractor, on May 16, 2023.  The subcontract provided that Costa

"agrees to furnish all labor and materials required for the completion of all work specified in Section No.(s):  04 00 01 – MASONRY FILED SUB BID, 04 20 00 -  UNIT MASONRY, 04 72 00 – CAST STONE MASONRY of the Specifications for MASONRY and the Drawings referred to therein, and ADDENDA NO. 1-3 and ALTERNATE NO. N/A, for the conclusion of:  [the public safety facility]."

The subcontract further stated that Costa

"agrees to be bound to the Contractor by the terms of the hereinbefore described Drawings, Specifications (including all General Conditions stated therein) and Addenda No. 1-3 and Alternative No. N/A, and to assume to the Contractor all the obligations and responsibilities of the Contractor by those documents assumes to the TOWN OF HINGHAM, MASSACHUSETTS . . . ."

Colantonio agreed to pay Costa $2,417,000 for its work.

On July 27, 2023, an assistant project manager at Colantonio sent an e-mail message to Costa to ask when it planned to submit product data for the stone veneer at the site walls.  After an estimator at Costa wrote, "We don't own any stone veneer per specifications," Colantonio's assistant project manager replied, "It was part of Addenda [sic] 2.  Please find excerpt attached."  That attachment is not included in our record.

On August 16, 2023, Costa sent a letter to Colantonio disputing ownership of the disputed work.  It asserted that "[t]he plans and specifications make it clear that this work is not ours" and that "[t]he addenda that were released during the bid timeframe never provided any instruction that the

4

procurement and execution of this scope, which clearly falls under Division 32, was to be included within Division 04 Filed Sub-Bid Mason responsibilities." Kaestle responded in a letter, stating that "[b]ased on our review of the claim, and previous addenda responses, we find that there was adequate information and data provided to outline the ownership of the site walls and entry sign throughout the Bidding process as identified in the claim to the Masonry Filed Sub-Bidder."

On September 18, 2023, Costa requested that the town issue a change order for additional costs required to do the disputed work. After the town declined to issue a change order, Costa filed this action.

Discussion. We review the dismissal of a complaint under either rule 12 (b) (1) or (6) de novo. See Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 231 (2015), citing Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). We similarly review the allowance of a motion for judgment on the pleadings de novo. See Mullins v. Corcoran, 488 Mass. 275, 281 (2021).

1. Declaratory judgment claim against Kaestle. The judge properly dismissed Costa's claim for declaratory relief against Kaestle because no actual controversy exists between the two companies.

5

In evaluating the dismissal of a claim for declaratory relief, we first determine whether it is "properly brought," meaning that the plaintiff has demonstrated that an actual controversy exists, the plaintiff has standing to sue, and all necessary parties have been joined.  Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 18 (2018).  See G. L. c. 231A, §§ 1, 8.  An actual controversy is

> "a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation."

Gay & Lesbian Advocates & Defenders v. Attorney Gen., 436 Mass. 132, 134-135 (2002) (GLAD), quoting Bunker Hill Distrib., Inc. v. District Attorney for the Suffolk Dist., 376 Mass. 142, 144 (1978).  A complaint for declaratory relief must provide "clear allegations of specific facts to state a case for any relief, or to show that any real controversy exists" (citation omitted). Penal Inst. Comm'r for Suffolk County v. Commissioner of Correction, 382 Mass. 527, 531 (1981).  A controversy in the abstract is not enough and "conclusory allegations as to . . . potential future conflicts will not do" (citation omitted). Boston Herald, Inc. v. Superior Court Dep't of the Trial Court, 421 Mass. 502, 504 (1995).

That Kaestle is, as Costa contends, "involved in literally all of the processes at issue," fails to establish an actual controversy with respect to the specific declaratory relief requested by Costa. Costa seeks (1) a declaration that Costa is not responsible for performing the disputed work, and (2) the invalidation of the town's determination that the disputed work is within the scope of masonry work. That relief would apply to the town, as the awarding authority, and to Colantonio, its general contractor and counterparty to Costa's subcontract, but not to Kaestle. In its complaint, Costa asserts that the town, Colantonio, and Kaestle are all "necessary parties" to the action because "their contractual rights and obligations under each of their respective contracts would be affected by the declaratory relief sought." That conclusory allegation, however, is not supported as to Kaestle. Kaestle is not a party to the contracts between the town and Colantonio, or between Colantonio and Costa. Costa alleges only that Kaestle contracted with Hingham, prepared the masonry specifications at issue, and issued a letter to Colantonio in September 2023 concluding that the site work fell within Colantonio's scope of work. Thus, the declaration that Costa seeks would have no impact on Kaestle's legal rights.

Costa's suggestion that, if Kaestle's dismissal is affirmed, it may sue Kaestle "for its negligence in the preparation of the pre-bid documents," has no bearing on this conclusion. The possibility of a future dispute based on the outcome of this matter does not establish that, "unless the matter is adjusted," the claim that Costa asserts here "will almost immediately and inevitably lead to litigation." GLAD, 436 Mass. at 134-135, quoting Bunker Hill Distrib., Inc., 376 Mass. at 144. See Boston Herald, 421 Mass. at 504. Whether the disputed work falls within the scope of the subcontract is distinct from any liability that an architectural firm like Kaestle may have for having prepared the plans and specifications for the project. See Trustees of Tufts College v. Volpe Constr. Co., 358 Mass. 331, 340 (1970) (not all who "might ultimately be affected" are necessary parties where dispute "can be resolved by a declaration of the rights and duties" of parties under contract).

Costa's reliance on Long Island Painting Corp. v. Beacon Constr. Co., 345 Mass. 567 (1963), is unavailing. That case was brought by a subcontractor, and the Supreme Judicial Court reversed the declaratory decree it obtained in the Superior Court because the decree purported to affect the rights of the general contractor, which had been dismissed from the case

8

earlier.  See Long Island Painting Corp., 345 Mass. at 570-572.

Unlike the general contractor in that case, Kaestle is not a

necessary party here because its rights would not be affected by

the declaratory relief that Costa seeks.  Nor do we discern any

risk of "inconsistent judgments," as Costa asserts.

2.  Declaratory judgment claims against the town and

Colantonio.  Because the record does not include key documents

referenced in the subcontract between Colantonio and Costa, we

are unable to review the judge's decisions to allow (1) the

town's motion to dismiss the declaratory judgment claim against

it, and (2) Colantonio's motion for judgment on the pleadings on

the declaratory judgment claim against it.

The key issue in this case is whether Costa agreed to

perform the disputed work under its subcontract with Colantonio.

In its complaint, Costa maintained that it did not because the

disputed work "is not specified in the Masonry Specs, and, thus

is not part of Costa's scope of work."

The statutory scheme set forth in G. L. c. 149, §§ 44A-44J,

governs bidding procedures for public construction projects.

Subcontractor bidding is governed by G. L. c. 149, § 44F.  As

relevant here, G. L. c. 149, § 44F, states,

> "[e]very contract subject to [G. L. c. 149, § 44A] shall
> include specifications . . . .  Such specifications shall
> have a separate section for each of the following classes
> of work if in the estimate of the awarding authority such

9

> class of work will exceed $25,000: . . . (q) masonry work; . . . . Each separate section in the specifications . . . shall specify by number each sheet of plans showing work to be done by the subcontractor under such section, . . . . Each class of work set forth in a separate section of the specifications pursuant to this section shall be a sub-trade designated in the appropriate category of the general bid form and shall be the matter of subcontract made on the basis of the sub-bids. . . ."

G. L. c. 149, § 44F (1) (a). Thus, each class of work, such as masonry, must be listed in a separate section of the specifications, but the "work to be done by the subcontractor" shall be shown in "number[ed] sheet[s] of plans" listed under each section. Id.

Here, the materials attached to Costa's complaint show that the specifications for the disputed work are set forth in Division 32 of the project manual, which governs "Site Improvements." Those specifications include a "stone monument sign and stone veneer retaining wall" and a "granite seat wall." The town did not solicit subbids for the site improvement scope of work because it is not a mandatory filed sub-trade bid section under G. L. c. 149, § 44F (1) (a).

Costa's subcontract does not refer to Division 32 or the site improvements specifications. Nor are those specifications directly referenced under the masonry specifications. The defendants argue that the masonry specifications show the scope of the masonry work on a series of drawings, and that one of

10

those drawings, Drawing L-704, "unambiguously" refers to and incorporates the specifications within Division 32. Drawing L-704 is not in the record before us, however, and we may not go outside the record in reviewing the judge's decision. See Melia v. Zenhire, Inc., 462 Mass. 164, 165-166 (2012), citing Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) ("In reviewing a dismissal under rule 12 (b) (6), we may consider the allegations in the complaint, items appearing in the record, and exhibits attached to the complaint"). Thus, we cannot determine whether, through Drawing L-704, the masonry specifications incorporated by reference the relevant specifications in Division 32.

Nor do the addenda to the bidding documents fill this analytical gap. The subcontract between Costa and Colantonio incorporated Addenda Nos. 1 through 3 by reference. However, those addenda are not in our record either. Two of the addenda are partially excerpted in the correspondence between the parties that Costa attached to its complaint, and those excerpts appear to bear on whether the specifications for the disputed work were incorporated by reference into the masonry specifications. Kaestle's letter to Colantonio dated September 8, 2023, quoted a portion of Addendum No. 2 in which the following response to a request for information by a potential bidder was provided: "Yes, Division 04 00 01 Mason, should

11

carry the procurement and installation of the stone veneer, cast stone sign and granite cap for the entry signs and stone wall as indicated on Sheet L704."  Costa's letter to Colantonio dated August 16, 2023, quoted both that response and a portion of Addendum No. 3 in which the response to a different request for information stated that one entry sign on a stone wall was in "Cast Stone" and that the scope for it and another entry sign was "owned under specification section 32 28 00 and as depicted on sheet L-704" (without any other reference to the masonry specifications).

We reject the defendants' contention that judgment in the town's and Colantonio's favor can be affirmed because (1) it is undisputed that the subcontract incorporates the work specified in Addendum No. 2, and (2) the cited excerpt from that addendum states that the masonry specifications "should carry" the disputed work "as indicated on Sheet L704."  First, because Drawing L-704 is absent from our record, we cannot surmise what it means when other documents refer to that drawing.  More generally, it is axiomatic that, in interpreting a contract, "[t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.  The words of a contract must be considered in the context of the entire contract rather than in

12

isolation." Krumsiek v. Collins Elec. Co., 105 Mass. App. Ct. 214, 219 (2025), quoting Rubin v. Murray, 79 Mass. App. Ct. 64, 75-76 (2011).

As the judge correctly explained in her decision, the test for resolving disputes about the scope of work in a public construction subcontract is "the degree of obviousness" of any "omission, error or discrepancy in the specifications." John F. Miller Co. v. George Fichera Constr. Corp., 7 Mass. App. Ct. 494, 498 (1979). If a discrepancy is subtle, so that a subcontractor who examines the specifications reasonably conscientiously "might miss a requirement which is out of sequence or ineptly expressed," the burden of the error falls on the issuer of the specifications. Id. On the other hand, if an omission, error, or discrepancy in the specifications is obvious, the subcontractor has a duty to "at least ask for clarification if he intends 'to bridge the crevasse in his own favor.'" Id. at 499, quoting Beacon Constr. Co. v. United States, 314 F.2d 501, 504 (Ct. Cl. 1963). Here, without the benefit of all the pertinent bidding materials (including but not limited to Drawing L-704 and the full pre-bid addenda), we cannot determine whether there was an omission, error, or discrepancy -- obvious or otherwise -- in the masonry specifications with respect to the disputed work. The

13

incomplete record similarly precludes us from assessing whether there are any ambiguous provisions in the bidding materials that would allow, as Costa argues, the consideration of evidence regarding business customs applicable to the masonry trade as an aid in interpretation.  See John F. Miller Co., supra at 499, citing Hardware Specialties, Inc. v. Mishara Constr. Co., 2 Mass. App. Ct. 277, 279 (1974).  See also Balles v. Babcock Power Inc., 476 Mass. 565, 572 (2017) ("To determine whether the language at issue is ambiguous, we look both to the contested language and to the text of the contract as a whole").

By this remand, we do not suggest that this type of dispute cannot be resolved at the pleading stage.  The problem here is with the record, not the law.  Costa attached only some of the relevant bidding materials as exhibits to its complaint:  i.e., the masonry specifications but not Drawing L-704 referenced therein, and letters setting forth excerpts of the addenda but not the addenda themselves (other than the first page of the nine-page Addendum No. 3).  Under the rules of civil procedure, those exhibits became a part of the complaint "for all purposes."  Mass. R. Civ. P. 10 (c), as amended, 456 Mass. 1401 (2010).  Although Costa could have facilitated the more efficient resolution of this case by providing a full record in support of its complaint, it was not required to do so.  See

14

id., Reporter's Notes (1973) ("Rule 10 [c] does not purport to require that any document be made part of any particular pleading.  The option remains with the pleader . . . .").  For their part, the defendants could have attached the missing materials to their motions but did not.  See <u>Marram</u> v. <u>Kobrick Offshore Fund, Ltd</u>., 442 Mass. 43, 45 n.4 (2004) ("Where, as here, the plaintiff had notice of these documents and relied on them in framing the complaint, the attachment of such documents to a motion to dismiss does not convert the motion to one for summary judgment").  See also <u>Golchin</u> v. <u>Liberty Mut. Ins. Co</u>., 460 Mass. 222, 224 (2011); <u>Fraelick</u> v. <u>PerkettPR, Inc</u>., 83 Mass. App. Ct. 698, 700 n.3 (2013).

<u>Conclusion</u>.  So much of the judgment as dismissed the claim against Kaestle is affirmed.  So much of the judgment as dismissed the claims against the town and Colantonio is vacated,

15

and the matter is remanded for further proceedings consistent with this memorandum and order.[2]

So ordered.

By the Court (Neyman,
   Hershfang & Toone, JJ.[3]),

_Paul Little_

Clerk

Entered:  May 15, 2026.

---

[2] Kaestle's request for attorney's fees and double costs is denied.  Colantonio's request for attorney's fees and costs is denied.

[3] The panelists are listed in order of seniority.