B. J. HARLAND ELECTRICAL CO., INC. *vs.* GRANGER
BROTHERS, INC., & another.[1]

Suffolk.    March 16, 1987. — July 21, 1987.

Present: PERRETTA, KAPLAN, & WARNER, JJ.

*Contract,* Public works, Building contract, Specifications, Performance and
breach, Construction of contract. *Public Works,* Payment bonds, Specifi-
cations, Delay.

In an action brought by a subcontractor on a public works project against
the general contractor and its surety alleging that the general contractor
had failed to perform its work in an orderly manner and to coordinate
the project's work so that the plaintiff could perform its work by the
contract completion date and that, as a result of such failure, the plaintiff
incurred additional expenses in having to perform its work piecemeal,
out of sequence, and in winter weather, it was held that the plaintiff
was not entitled to recover such additional expenses, where those ex-
penses constituted hindrance or delay damages, recovery of which was
precluded by the terms of its subcontract, and where there was nothing
in those portions of the contract incorporating the language of G. L.
c. 149, §§ 44C and 44I (3), as in effect prior to St. 1980, c. 579, § 55,
which would have given the plaintiff the right to seek damages for
hindrances or delays. [509-514]

CIVIL ACTION commenced in the Superior Court Department
on November 15, 1982.

The case was heard by *Haskell C. Freedman,* J., sitting
under statutory authority.

*John F. Hurley, Jr.,* for the defendants.
*Joseph A. Pisarri* for the plaintiff.

PERRETTA, J. This appeal arises out of an action brought
under the public works payment bond statute, G. L. c. 149,

---

[1] United States Fidelity and Guaranty Company, which, with Granger
Brothers, Inc., filed a third-party complaint against the Commonwealth and
its architect. That complaint was severed from the present action and is
pending. The present judgment was entered pursuant to Mass.R.Civ.P.
54(b), 365 Mass. 821 (1974).

§ 29 (as amended through St. 1972, c. 774, § 5), by the plaintiff subcontractor (Harland) against the defendant general contractor (Granger) and its surety (Fidelity). Harland alleged that Granger had failed to "begin, perform and complete its work in an orderly manner" and to "supervise and coordinate all the project work so that Harland [, in turn,] could perform its work in an orderly manner" and by the contract completion date. Harland alleged that, as a result of Granger's failures, Harland incurred expenses above the contract price for which, by this action, it sought recovery on the bond. Judgment entered against Granger and Fidelity, "jointly and severally." We conclude that the expenses sought by Harland are delay damages and that recovery of such damages is precluded by the terms of its subcontract. We reverse the judgment, and remand the matter for a recalculation of the amount otherwise due Harland.

I. *The Facts.*

We recite the facts as they were found by the trial judge under Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). In 1978, the Commonwealth, through its Bureau of Building Construction, solicited bids for the construction of a campus center at Holyoke Community College. Granger was selected as the general contractor, and it entered into a subcontract with Harland, the lowest qualified bidder, for the electrical work. That contract price was $257,760. Fidelity, as surety for Granger, issued a payment bond, as required by G. L. c. 149, § 29.

It was originally planned that the building, to be of poured concrete, would be constructed "horizontally," that is, from the ground upwards, floor by floor. Work began in the summer of 1978, and while excavating for the foundation, Granger ran into ledge. Rather than clearing the ledge, Granger abandoned the "horizontal" plan for the season and continued to build upward over that portion of the site that it had been able to prepare, later extending each floor as the ledge was removed. Harland, which had to install conduits to carry wiring inside the floors, walls, and ceilings as they were poured, was required to follow Granger in this new construction sequence.

As a consequence of this change, Harland's efficiency was adversely affected. Its workers were forced to work piecemeal,

moving from place to place as work became available rather than proceeding in an orderly sequence.

There were other problems. Granger poured ceilings which the architect deemed unacceptable and for which he demanded corrections. Eight months elapsed while the matter was disputed. It was resolved when Granger undertook remedial patching and painting. In the meantime, however, Harland could not install ceiling-mounted light fixtures. When the remedial work was done, Harland's electricians could not use a rolling scaffold to hang lights because by then the interior walls had been poured. Consequently, the electricians had to erect and dismantle fixed scaffolding in each room. Further, a template could not be used to mark the ceilings where drilling was to be done to connect the fixtures, as the template scratched the paint that Granger had to apply in doing the remedial work. The drill holes thus had to be measured and marked by hand.

Harland's efficiency was further hampered by the fact that Granger did not have enough concrete forms, which reduced the amount of concrete that could be poured at any one time. During the winter, Granger provided heat only in those areas where it was pouring concrete. Harland's employees often had to work in cold, and sometimes unenclosed, areas, decreasing their efficiency and slowing their progress.

Onsite problems arose with frequency. Without going into detail, some of the problems were caused by errors, omissions, or conflicts in the project plans and specifications. The time problem was exacerbated as solutions were sought and decisions were made. Throughout construction, Harland's president and Granger's job superintendent frequently discussed the progress of the project. The job superintendent indicated that Granger intended to present a claim for delay costs and that Harland could submit its damages with that claim. Granger, however, went out of business without having pursued its or Harland's claims.

Harland's claim is that it substantially completed its work by the end of October, 1980, some nine months later than the originally scheduled completion date. Granger paid Harland

$298,148.23,[2] but Harland claims that it was owed $347,798.20, the amount due for the contract work plus the fair market value of the extra labor and materials, leaving a balance owed of $49,649.97. The trial judge found that, because of the numerous previously described events, Harland had incurred increased labor costs (caused by reduced productivity and periodic wage increases to its workers) and overhead expenses subsequent to the scheduled completion date of its work on the contract. He entered a judgment for Harland in the amount of $44,860.97, plus interest. The judgment was thereafter amended to include legal fees for Harland in the amount of $15,500.

II. *The Contract.*

Article XXIII of the general conditions of the prime contract which was incorporated in the subcontract, reads: "DELAYS. Except as otherwise provided by law the contractor shall not be entitled to damages on account of any hindrances or delays, avoidable or unavoidable; but if such delay be occasioned by the awarding authority, the contractor may be entitled to an extension of time only, in which to complete the work, to be determined by the designer."[3] It is well established in Massachusetts that a contract provision such as art. XXIII is enforceable and precludes an award of damages on account of delay. See *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495, 499-501 (1939); *Coleman Bros.* v. *Commonwealth,* 307 Mass. 205, 215-216 (1940); *Charles T. Main, Inc.* v. *Massachusetts Turnpike Authy.,* 347 Mass. 154, 162-163 (1964); *Wes-Julian Constr. Corp.* v. *Commonwealth,* 351 Mass. 588, 594-597 (1967); *Joseph E. Bennett Co.* v. *Commonwealth,* 21 Mass. App. Ct. 321, 329-330 (1985).

---

[2] The components of this amount are as follows: the contract price of $257,760, plus the cost of extra work and materials ordered by Granger in the amount of $41,314.20, less an amount of $925.97 which, however, Granger admitted at trial was still owing.

[3] Article XXIII also sets out the provisions of G. L. c. 30, § 39O, which describes those conditions under which a contractor or subcontractor may recover damages for delay. See part III of this opinion, *infra.*

Harland argues that art. XXIII is not applicable to its claim because it is not seeking damages for delay; rather, it wants the "increased cost of performing its work piecemeal, out of sequence and in winter weather, which conditions are the direct result of Granger's failure to begin, prosecute, and complete its work in an orderly manner and to provide winter heat and weather protection." If Harland's claim is not based upon delay, then it appears to us that Harland is seeking damages for hindrances. See, e.g., *John E. Green Plumbing & Heating Co. v. Turner Constr. Co.*, 742 F.2d 965, 966-967 & n.3 (6th Cir. 1984). There the contractor successfully argued that delay damages referred only "to the cost of an idle workforce" whereas its extra expenses were incurred as a result of hindrances, e.g., "failure to properly coordinate work on the project and failure to ensure that temporary heat was provided." In accepting the contractor's distinction, the court relied heavily on the fact that the contract there in issue precluded damages only on account of delay rather than the commonly used language of "delay or *hindrance*" (emphasis in original). *Id.* at 967. In other cases relied upon by Harland where the contract precluded delay damages but recovery was nonetheless allowed, the awards were based upon conduct found to constitute active interference. See, e.g., *Blake Constr. Co.* v. *C. J. Coakley Co.*, 431 A.2d 569, 579 (D.C. 1981); *De Riso Bros.* v. *State,* 161 Misc. 934, 940-942 (N.Y. Ct. Cl. 1937).

In the present instance, any distinction between delay and hindrance damages is one without a difference. The contract speaks to both, "hindrance or delays," bringing Harland's claims squarely within the preclusive terms of art. XXIII. See the judgments against the claimants in: *Coleman Bros.* v. *Commonwealth,* 307 Mass. at 216 (faulty plans, indecision, unreasonable delays in ordering extra work); *Charles T. Main, Inc.* v. *Massachusetts Turnpike Authy.,* 347 Mass. at 162-163 (delays resulting from extensions of time to contractors); *Wes-Julian Constr. Corp.* v. *Commonwealth,* 351 Mass. at 596-597 (unreasonable delay in arranging for removal of utilities from site); *Joseph E. Bennett Co.* v. *Commonwealth,* 21 Mass. App.

Ct. at 329-330 (failure to coordinate and control work). Additionally, Harland's claims are not based upon any allegations of arbitrariness or intentional wrongdoing by Granger. See and compare *Farina Bros.* v. *Commonwealth,* 357 Mass. 131, 138-139 (1970), with *Joseph E. Bennett Co.* v. *Commonwealth,* 21 Mass. App. Ct. at 330.

III. *Applicability of Art. XXIII.*

In reliance upon the prefatory language to the preclusive terms of art. XXIII, "[e]xcept as otherwise provided by law," Harland argues that its right to recover on its claim is provided for by G. L. c. 149, §§ 44C and 44I(3), as in effect prior to St. 1980, c. 579, § 55.[4] Section 44C mandated that public works construction contracts contain a provision requiring the general contractor to install weather protection in work areas and to "furnish adequate heat in the area so protected during the months of November through March." Section 44I(3) required that the following language appear in contracts for public works construction: "The contractor agrees to begin, prosecute and complete the entire work specified by the Awarding Authority in an orderly manner so that the subcontractor will be able to begin, prosecute and complete the work described in this subcontract." Although these mandated clauses do not appear within art. XXIII, they are elsewhere appropriately included in the contract.

Article XXIII does contain, verbatim, the language of G. L. c. 30, § 39O, inserted by St. 1973, c. 1164.[5] This required statutory language immediately follows the no delay damages

---

[4] See now G. L. c. 149, §§ 44F(1) and 44F(4)(*c*), containing language identical in substance to the sections cited in the text.

[5] This statute, which appears in full in art. XXIII, provides:

"Every contract subject to the provisions of section thirty-nine M of this chapter or subject to section forty-four A of chapter one hundred forty-nine shall contain the following provisions (a) and (b) in their entirety and, in the event a suspension, delay, interruption or failure to act of the awarding authority increases the cost of performance to any subcontractor, that subcontractor shall have the same rights against the general contractor for payment for an increase in the cost of his performance as provisions (a) and (b) give the general contractor against the awarding authority, but nothing in provisions (a) and (b) shall in any way change, modify or alter

clause of art. XXIII. As we read art. XXIII, it allowed Harland to seek "payment for an increase in the cost of. . . [its] performance," G. L. c. 30, § 39O, provided the increase could be attributed to those causes set out in § 39O, and that the additional payment was sought in the manner therein prescribed.[6] Harland advises us in its brief, however, that it "does not claim under that statute."[7]

---

any other rights which the general contractor or the subcontractor may have against each other.

(a) The awarding authority may order the general contractor in writing to suspend, delay, or interrupt all or any part of the work for such period of time as it may determine to be appropriate for the convenience of the awarding authority; provided, however, that if there is a suspension, delay or interruption for fifteen days or more or due to a failure of the awarding authority to act within the time specified in this contract, the awarding authority shall make an adjustment in the contract price for any increase in the cost of performance of this contract but shall not include any profit to the general contractor on such increase; and provided further, that the awarding authority shall not make any adjustment in the contract price under this provision for any suspension, delay, interruption or failure to act to the extent that such is due to any cause for which this contract provides for an equitable adjustment of the contract price under any other contract provisions.

(b) The general contractor must submit the amount of a claim under provision (a) to the awarding authority in writing as soon as practicable after the end of the suspension, delay, interruption or failure to act and, in any event, not later than the date of final payment under this contract and, except for costs due to a suspension order, the awarding authority shall not approve any costs in the claim incurred more than twenty days before the general contractor notified the awarding authority in writing of the act or failure to act involved in the claim."

[6] Also, art. XXII of the contract sets out, verbatim, the language of G. L. c. 30, § 39N, inserted by St. 1972, c. 774, § 4 which is comparable to § 39O, and which provides, in pertinent part: "If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions."

[7] Statements in Harland's brief concerning its right to seek delay damages under § 39O, as incorporated in art. XXIII, are somewhat contradictory. Harland first states that it makes no claim under § 39O. Later, Harland argues that, "because it had no privity" with the Bureau of Building Construction, it could seek damages only from the defendants who, by their

There was nothing in G. L. c. 149, §§ 44C and 44I(3) (see note 4, *supra*), or in the contract which expressly provided for a remedy in the event of a breach of those statutory obligations by Granger. That is not to say, however, that Harland was at Granger's mercy. It was open to Harland to take the position that Granger's failures were sufficiently egregious to excuse Harland from further performance of its duties under the contract and to seek recovery for any damages caused by Granger's breach. See *Quintin Vespa Co. v. Construction Serv. Co.*, 343 Mass. 547, 554 (1962); *Ward v. American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100-101 (1983).

Harland does not here seek reimbursement for any labor and materials that it furnished beyond what were called for by the contract. Compare *Richardson Elec. Co. v. Francese*, 21 Mass. App. Ct. 47 (1985); *Joseph E. Bennett Co. v. Commonwealth*, 21 Mass. App. Ct. at 326-329. Rather, all its claims are based upon a decrease in its efficiency as a result of a lack of heat, inaccurate construction plans and specifications,[8] and having to perform its work out of sequence, and the trial judge found to that effect.

We must construe the contract as a whole. "Contracts are made to be performed, and it must be held that the parties intended to enter into a complete and final arrangement under

---

third-party complaint, can "recoup whatever damages Harland may recover" in the present action. Later still, Harland contends that, "even if" its claim "were somehow construed to be a 'delay claim,' the defendants would nevertheless be entitled to relief" under § 39O in the third-party action. Next, in support of the defendants' right to indemnification for any delay damages recovered by Harland, Harland argues that § 39O allows for delay damages in instances, such as the present, where the delay is due to reasons other than an order by the awarding authority to the general contractor "to suspend, delay, or interrupt all or any part of the work. . . " § 39O.

[8] Harland claims that Granger can be held accountable to it for the defective plans and specifications on the authority of *John F. Miller Co. v. George Fichera Constr. Corp.*, 7 Mass. App. Ct. 494, 499 (1979), and *Richardson Elec. Co. v. Francese*, 21 Mass. App. Ct. at 52. Those cases hold that a contractor may be liable to a subcontractor for an "omission, inconsistency, or discrepancy" in plans and specifications which is "obvious" to the contractor who nonetheless uses the plans and specifications "to secure a secondary level of bids." *Ibid.*

such terms and conditions as would create and define their obligations and would enable them to accomplish their contemplated aims and objects. With this end in view, every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. at 501. Reading the contract as a harmonious and workable whole, we find nothing in those portions of the contract incorporating the language of G. L. c. 149, §§ 44C and 44I(3), which gives Harland the right to seek damages for hindrances or delays. The right to recover damages for hindrances or delays is comprehensively provided for by art. XXIII (and, perhaps art. XXII, see note 6, *supra*), subject to the limitations therein contained and agreed to by Harland when it signed the contract. That article is enforceable and binding upon Harland.

IV. *Conclusion.*

It follows from what we have said that we need not consider the defendants' argument that delay damages cannot be recovered under the payment bond issued pursuant to G. L. c. 149, § 29. However, Granger admitted at trial, and Fidelity does not dispute, that there is money due and owing Harland on the contract. See note 2, *supra*. Payment of that amount is guaranteed by the bond and is properly recovered in an action brought under § 29. Accordingly, the judgment is vacated, and the case is remanded to the Superior Court, where a new judgment for Harland shall be entered in an amount of $925.97, plus interest and counsel fees, which must be recalculated. Costs of appeal are not to be awarded to any party.

*So ordered.*