Agnes, A.J.
1. Introduction
The defendants, D.A. Sullivan & Sons, Inc. (Sullivan) and Federal Insurance Company have moved for summary judgment in response to claims brought by plaintiff, JRJ Construction Co., Inc. (JRJ) that there is an unpaid balance under their subcontract which was part of a public construction project in the city of Springfield. It is conceded that the originally contracted-for sum was paid to JRJ by defendant, but JRJ is seeking an additional $139,842.83 for work it performed allegedly beyond the scope of the contract. The main issue is whether the contractually provided for change order procedures must have been followed before requesting extra payment, or whether the parties’ conduct and oral statements constitute a waiver of the specific terms of the contract.
*328 2. Background
Plaintiff, JRJ, entered into a subcontract with Defendant Sullivan on June 2, 1997 under which it was responsible for lathing and plastering work on the construction and renovation of a public school. Sullivan was the general contractor who had been retained by the City of Springfield to cany out the renovations. The terms of the contract included a change order process by which all proposed changes (“extras”) that resulted in a claim for extra compensation had to be submitted in writing and approved prior to performing the work. JRJ did not obtain written approval for the work it considers “extras” which consisted principally of plaster patching. JRJ objected both verbally and in writing with respect to the four disputed items of extra work. After being verbally directed to perform the work and receiving written orders to proceed; JRJ notified Sullivan that additional compensation would be sought, and upon completion submitted bills for the fair value of the work.
The terms of the contract called for JRJ to perform patching work adjacent to the openings and within 1000 square feet of this area. After learning that plaster patching was required beyond what JRJ believed to be contemplated by the contract, it was agreed among JRJ, Sullivan, and Springfield’s Clerk of the Works, Bob McQuade, that McQuade and JRJ would inspect all patches to determine the extent of patching which was part of the base contract work, and which was extra. Drawings were made to reflect these determinations, and photographs were submitted at Sullivan’s request. None of the notices or invoices submitted by JRJ were rejected by Sullivan.
3. Discussion
According to Rule 56(c) of the Massachusetts Rules of Civil Procedure, summary judgment should be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits . . . show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c). The party moving for summary judgment has the burden of showing that there is no dispute as to a material fact on every relevant issue. Foley v. Boston Housing Authority, 407 Mass. 640, 643 (1990). If this burden is met, the burden then shifts to the non-moving party to demonstrate that there are genuine issues of material fact. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the party opposing the motion establishes the existence of a genuine issue of material fact, the motion for summary judgment is defeated. O’brion, Russell & Co. v. LeMay, 370 Mass. 243, 245 (1976).
Where there are procedures spelled out in a contract through which a contractor may receive compensation for additional work to be performed, the contractor typically forfeits payment if these procedures are not followed. Glynn v. Gloucester, 21 Mass.App.Ct. 390, 395 (1986); State Line Contractors, Inc. v. Commonwealth, 356 Mass. 306, 318 (1969). However, Massachusetts law recognizes that a waiver may exist when verbal orders are given which require a subcontractor to perform beyond the scope of the contract. M.L. Shalloo, Inc. v. Ricciardi and Sons Construction, Inc., 348 Mass. 682, 685 (1965). “[A] conclusion that there was a waiver of a provision of a subcontract on a construction project that an agreement for extra work must be done ‘in writing’ was proper where it appeared that extra work done by the subcontractor was done ... at the request of the general contractor...” Shalloo, 348 Mass. At 685-86. The existence of a waiver is a matter of fact. See Cueroni v. Coburnville Garage, Inc., 315 Mass. 136, 138 (1945).
The case at bar can be distinguished from B.J. Harland Electrical Co. v. Granger Brothers, Inc., cited in the defendant’s brief, in which a subcontractor sued a general contractor for damages arising from an alleged decrease in efficiency caused by the general contractor’s delay. 24 Mass.App.Ct. 506, 513 (1987). There was a provision in the contract stating that the contractor would not be entitled to damages as a result of delay, and these terms were upheld by the court. Id. at 509. The difference between Harland and the case at bar is that the subcontractor was not seeking reimbursement for labor or materials beyond what were called for by the contract, they sought compensation for their working conditions caused by the contractor’s delay. Id. at 513. The court recognized that although there was a contractual provision which barred a claim based on delay, Harland was not at Granger’s mercy and Harland could potentially have sought recovery for any damages caused by Granger’s breach. Id. In the instant case, JRJ is seeking reimbursement for labor and materials beyond what they allege was called for by the contract and if a waiver is found they may be entitled to reimbursement.
There are factual disputes about whether JRJ and Sullivan’s behavior could constitute a waiver of the change order procedure outlined in the contract. Specifically, JRJ contends that the work they were being asked to perform was neither adjacent to damaged surfaces nor within the 1000-square-foot allowance as provided by the contract. Sullivan’s argument is that all patching work was included in the contract. This leads to further factual disputes about why McQuade walked through the property with JRJ and why photographs were submitted of the areas which JRJ considered to be extra. There is also a question of fact surrounding JRJ’s understanding of the plans. Sullivan claims that JRJ found them ambiguous and cannot rely upon this as a lack of notice in seeking compensation. JRJ responds that on the contrary, the plans were very clear and based on the understanding derived from the plans they can be certain that some of the work was extra. JRJ asserts that Sullivan never questioned their compliance with procedure, and that there were at least four occasions *329 where Sullivan submitted JRJ’s bills as part of its own change order requests to Springfield. Verbal orders were given, and JRJ followed these orders only after protest with the understanding that they would be compensated for any work that may be considered extra.
4. Order
For the reasons stated above, the defendants’ motion for summary judgment is DENIED.