NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-1117                                          Appeals Court

CENTRAL CEILINGS, INC. vs. SUFFOLK CONSTRUCTION COMPANY, INC. & others.[1]


No. 15-P-1117.

Suffolk.     October 7, 2016. - March 29, 2017.

Present:  Agnes, Maldonado, & Desmond, JJ.


Contract, Construction contract, Subcontractor, Damages.
    Damages, Breach of contract, Attorney's fees. Practice,
    Civil, Attorney's fees, Discovery.


    Civil action commenced in the Superior Court Department on October 3, 2006.

    The case was heard by S. Jane Haggerty, J.; an award of attorney's fees was entered by her; and a motion for reconsideration was considered by Judith Fabricant, J.


    Joel Lewin (John P. Connelly also present) for the defendants.
    Paul R. Mordarski (Thomas J. Fullam also present) for the plaintiff.


    DESMOND, J.  After a jury-waived trial, a Superior Court

judge entered judgment awarding the plaintiff, Central Ceilings,

_____

    [1] Fidelity and Deposit Company of Maryland, Safeco Insurance Company of America, and XL Specialty Insurance Company.

Inc. (Central), $321,315 on its breach of contract claim for damages for loss of productivity incurred while acting as a subcontractor for defendant Suffolk Construction Company, Inc. (Suffolk), on a large construction project.  This case is before us on cross appeals.

Suffolk challenges the judgment,[2] claiming, inter alia, that Central's claim was barred by the "no-damages-for-delay" clause in the subcontract between the parties, and that the judge erred in ruling that Central had established its claim for damages by the "total cost" method.  Suffolk further challenges the judge's award of $471,682 in attorney's fees to Central, claiming that it was wrongfully denied discovery and a hearing prior to the entry of that award.

On its cross appeal, Central challenges the judge's holding that the "pay-if-paid" clause in the subcontract barred it from recovering $82,538 from Suffolk for unpaid change order requests (CORs).  For the reasons set forth herein, the judgment on the merits entered on December 20, 2013, and the amended judgment for attorney's fees entered on September 9, 2014, are affirmed.

1.  Background.  First, we set forth the basic material facts, drawing extensively from the trial judge's thoughtful and

_____

    [2] While this appeal is brought on behalf of all defendants, other than Suffolk, the defendants are sureties and not principal actors in the underlying events.

thorough findings of fact, rulings of law, and decision.  The Massachusetts State College Building Authority (MSCBA) hired Suffolk to serve as general contractor on the construction of three interconnected dormitories at what is now known as Westfield State University (the project).  As the dormitories were to be ready for occupancy by students arriving for the fall semester in 2005, the contract between the MSCBA and Suffolk (the general contract) provided for a substantial completion date of July 1, 2005.  As an incentive for Suffolk to finish on time, the general contract further provided that Suffolk could either earn a $200,000 bonus for completing the project on time or pay significant liquidated damages if it was not.[3]

Central submitted a bid to serve as the subcontractor for installing, among other things, the exterior heavy metal gauge framing and sheathing, interior light gauge framing, drywall, and hollow metal door frames.  Critical to Central's estimate and ability to timely complete its work was the "flow" of the project, with each aspect of its work following in sequence, floor by floor, exterior to interior, building by building.

---

[3] The liquidated damages clause provided for payment of $30,000 for each week beyond July 15, 2005, up to September 2, 2005; $25,000 per additional day from September 3, 2005 to October 2, 2005; and a $810,000 lump sum payment for failure to complete the project by October 3, 2005.

Suffolk accepted Central's bid, and the parties entered into a subcontract in the original amount of $3,606,476.

From the outset, however, the project was plagued by problems as Suffolk failed to carry out many of its obligations, including: failing to coordinate the work of other "trades," such as the steel erector and window installer, whose work necessarily had to be completed before Central could complete its own; failing to establish proper elevation, column, and control lines, from which Central worked to construct the building in accordance with the plans; failing to provide for the timely and properly coordinated delivery of the hollow metal door frames to be installed by Central; and failing to ensure that the buildings were weather-tight and properly heated, both of which were essential to Central's ability to, among other things, carry out the temperature-sensitive tasks related to the installation of the gypsum wall board.[4]

As Central encountered each obstacle and awaited resolution, its workers, who had taken their tools and the

_____

[4] In addition, due to design defects, over 500 "requests for information" (RFIs) were submitted to the architect over the life of the project, with over 200 from Central alone. An RFI is generated when a contractor or subcontractor encounters an issue that is either inconsistent with, or not clearly addressed by, the plans. The RFI seeks clarification and/or direction from the architect, who responds with a "supplemental information" (ASI) and often a sketch. The architect issued over 200 ASIs on the project. The volume of RFIs and ASIs was not only unusual for a project of this size, but of any size.

necessary supplies and mobilized in a specific area to carry out a specific task, were repeatedly forced to break down and remobilize to a different area to carry out a different task. Then, once the obstacle had been overcome, Central's workers would have to do a "go back," remobilizing and completing the original task. Meanwhile, Central's project manager and other supervisory personnel were forced to spend an inordinate amount of time coordinating all of the changes and filling out related paperwork. The problems also resulted in Central's workers being forced to work in the same space and at the same time as other subcontractors, an inefficient situation commonly referred to in the industry as the "stacking of trades."

Given the substantial completion date, and the financial incentives and disincentives related thereto, Suffolk advised Central that no time extensions would be granted on the project. As a result, while the start dates for various aspects of Central's subcontract work were consistently pushed back due to the myriad of issues caused by Suffolk's breaches, the completion dates remained the same and the time within which Central had to perform was constantly "compressed." When Central complained, Suffolk told it to simply assign additional manpower to keep the project on track, which is what Central was forced to do. As such, even though the project was substantially completed on time, to the financial benefit of

Suffolk, the "flow" and productivity that Central had reasonably counted on when calculating its bid for the project suffered significantly.

Central brought this suit for breach of contract and quantum meruit claiming that Suffolk had not adequately managed and coordinated the project, and that these deficiencies resulted in damages for loss of productivity in the amount of $321,315 and $82,538 in unpaid CORs.[5]  The judge specifically found that Suffolk had breached the contract "(1) by failing to coordinate erection of the steel; (2) by incorrectly establishing the elevation, column, and control lines of Building 2; (3) by failing to order the [hollow metal door frames] and to coordinate delivery of the window and curtain walls in a timely manner; (4) by failing to provide the necessary climate for the interior work on the Project; and (5) by making errors in design that affected the plumbing, the heights and dimensions throughout the Project, the fan coil units in each room, the shaft walls, the curtain walls, and the pour stops."

At trial, Central sought to establish its damages due to this loss of productivity through the expert testimony of

---

[5] The judge did not allow recovery for the unpaid CORs which, as earlier noted, is the subject of Central's cross appeal.

Richard Broglino, an individual with substantial experience in the construction industry. Broglino opined that Central's loss was best quantified through the impact it had on "manpower." To that end, he first reviewed Central's original estimate for labor costs of $1,657,000 and determined that it was reasonably accurate. He then subtracted that figure, as well as amounts that Central had already recovered for labor through change orders, from the $2,310,526 in actual labor costs Central incurred on the project, resulting in a net loss of $321,315 in labor productivity. The judge determined Broglino's testimony was credible and awarded that amount to Central on its claims for breach of contract.[6]

2. Standard of review. On appeal from a jury-waived trial, we review the trial judge's findings of fact for clear error and review de novo her rulings on questions of law. Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 351 (2011).

3. Suffolk's appeal. a. "No-damages-for-delay" clause. Suffolk first argues that the award of damages, which was based on Central's claim of loss of productivity, contravened the following provision in the subcontract, often generically

---

[6] Having ruled for Central on its contract claims, the judge entered judgment for Suffolk and the surety defendants on Central's alternative quantum meruit claims.

referred to in the construction industry as a "no-damages-for-delay" clause:

> "The Subcontractor agrees that it shall have no claim for money damages or additional compensation for delay no matter how caused, but for any delay or increase in the time required for performance of this Subcontract not due to the fault of the Subcontractor, the Subcontractor shall be entitled only to an extension of time for performance of its Work.  Written notice of all claims for any extension of time shall be submitted to Contractor within ten (10) days of the date when Subcontractor knows (or should know) of the event which causes such delay, or such claim shall be considered waived by Subcontractor."

In Massachusetts, such a provision is, as a general proposition, enforceable.  See, e.g., Worcester v. Granger Bros., 19 Mass. App. Ct. 379, 388 (1985); B.J. Harland Elec. Co. v. Granger Bros., 24 Mass. App. Ct. 506, 509 (1987).[7]  Here both parties agree, and the judge determined, that the clause is unambiguous.  We concur.  Consequently, the no-damages-for-delay clause at issue here must be interpreted and applied on its own terms.  See Siebe, Inc. v. Louis M. Gerson Co., 74 Mass. App. Ct. 544, 550 (2009) (parole or extrinsic evidence not admissible to contradict or modify an unambiguous contract).  It was on the basis of that clause's plain language that the judge ruled, for

---

[7] At the same time, courts in various jurisdictions have recognized a number of exceptions to the enforceability of such clauses.  See Tricon Kent Co. v. Lafarge N. Am., 186 P.3d 155, 160 (Colo. Ct. App. 2008) (noting that recognized exceptions include instances of fraud, misrepresentation, bad faith, and "active interference").

two independent reasons, that it did not bar Central's claim. Suffolk now challenges both reasons.

i. <u>Deprivation of remedy</u>. The judge first determined the no-damages-for-delay clause inapplicable because, even if Central could be deemed to be seeking damages "for delay," Suffolk had deprived Central of its only remedy under that clause by refusing to grant requested extensions of time for performance. Suffolk argues that this finding was clearly erroneous because there was no evidence that Central ever requested extensions of time. This argument fails for at least two reasons.

First, we need not consider this argument because Suffolk, by its own admission, never raised it in the trial court. See <u>R.W. Granger & Sons, Inc</u>. v. <u>J & S Insulation, Inc</u>., 435 Mass. 66, 73-74 (2001) (an argument raised for the first time on appeal need not be considered). Suffolk, in response, argues that it had no reason to make the argument earlier because the issue of extensions of time arose only after the judge issued her decision. That suggestion, however, is belied by the record. Central's project manager testified that Suffolk had made clear that no extensions of time would be granted, and Central emphasized that point in its requests for findings of fact and rulings of law. The issue of the availability of time extensions, therefore, was a live issue at trial, and Suffolk

was required to raise any related arguments it had in that forum to preserve them for appeal.[8]  This it failed to do.

Second, even if we do consider Suffolk's argument, it fails independently.  Not only was there evidence at trial that Suffolk had made clear that no extensions of time would be granted on the project, that evidence was undisputed.  Thus, even though there was no evidence that Central requested extensions of time in writing, the judge's ruling was not clearly erroneous.  See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997) (finding is only "clearly erroneous" if "reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed").  As noted above, Central's project manager testified that Suffolk had communicated that no extensions of time would be granted.  Suffolk did not dispute that evidence. The evidence further established that Suffolk was financially incentivized to avoid extensions of time by both the bonus available to it for completing the project on schedule and the liquidated damages it faced for failing to do so.  In short, the

---

[8] Inexplicably, Suffolk states that it is not arguing that Central, even if seeking damages covered by the no-damages-for-delay clause, first has to establish that it requested and was denied extensions of time.  Suffolk's argument, therefore, seems circular in nature (i.e., the judge erred in finding that Central had satisfied a condition precedent that Suffolk concedes did not need to be satisfied).

only reasonable inference that could be drawn from the evidence was that the possibility of extensions had been foreclosed by Suffolk. As such, we see no basis for disturbing the judge's resulting conclusion that Suffolk had committed a material breach by depriving Central of its sole contractual remedy, thereby precluding Suffolk from invoking the no-damages-for-delay clause as a bar to Central's claim for damages. See Ward v. American Mut. Liab. Ins. Co., 15 Mass. App. Ct. 98, 100 (1983) (a material breach by one party precludes it from demanding performance by the other).[9]

ii. Nature of damages. The judge also determined that the no-damages-for-delay clause did not apply because Central was, in fact, not seeking damages "for delay." Suffolk now suggests that finding was in error because Central was seeking damages "caused by delays." The suggestion, however, misapprehends both the language of the no-damages-for-delay clause at issue and the judge's ruling, which applied that language.

---

[9] Suffolk suggests the judge erred by favorably comparing this case to Farina Bros. v. Commonwealth, 357 Mass. 131, 138 (1970), because the fact finder in that case found that the defendant acted in an unreasonable, arbitrary, and capricious manner in denying the plaintiff-contractor extensions of time. The judge's discussion of Farina, however, was not essential to her finding. Moreover, it was implicit in her ruling, and the record here supports a finding, that Suffolk, motivated by its own financial interests, acted in an unreasonable, arbitrary, and/or capricious manner by seeking to enforce a provision with a limited remedy, while simultaneously imposing a blanket prohibition against the remedy in that provision.

As the judge noted, courts have uniformly held that no-damages-for-delay clauses must be strictly construed due to the harsh effects they impose. See, e.g., United States Steel Corp. v. Missouri Pac. R.R. Co., 668 F.2d 435, 438 (8th Cir. 1982); John E. Green Plumbing & Heating Co. v. Turner Constr. Co., 742 F.2d 965, 966 (6th Cir. 1984) (John E. Green Plumbing); Tricon Kent Co. v. Lafarge N. Am., 186 P.3d 155, 159 (Colo. App. Ct. 2008). The clause here provides, in pertinent part, that Central "shall have no claim for money damages or additional compensation for delay no matter how caused, but for any delay or increase in the time required for performance of this Subcontract not due to the fault of the Subcontractor, the Subcontractor shall be entitled only to an extension of time for performance of its Work" (emphasis added). Strictly construing this language, the judge found that Central was not seeking damages because it had been delayed, but, rather, because it had been forced to increase its workforce due to the compression of the schedule occasioned by Suffolk's breaches of its obligations. As the judge further stated, "Suffolk's breaches did not affect Central's ability to complete its work on time . . . but, rather, with its ability to complete its work on budget."

According to Suffolk, the judge erred by defining "delay" to be limited to "an idle workforce." The argument, however,

mischaracterizes the judge's findings.  It appears that she found the reasoning of the Court of Appeals for the Sixth Circuit in John E. Green Plumbing to be persuasive.  Although the plaintiff-contractor did not ultimately prevail in that case, the court held that the plaintiff-contractor's claim for damages was not barred by the no-damages-for-delay clause because it interpreted that specific clause's reference to delay damages to mean damages for "the cost of an idle workforce." Id. at 966. ("delay means time lost where work cannot be performed because essential supplies have not been delivered or necessary preliminary work has not been performed") (emphasis added).  Ibid.  Notably, the clause in that case, which provided that "[s]hould the Contractor be delayed in the commencement, prosecution or completion of the work by the act, omission, neglect or default of the Manager . . . then the Contractor shall be entitled to an extension of time only[,]" was similar in focus and scope to the one at issue here.  Id. at 966 n.1 (emphasis added).  As an initial matter, therefore, the judge's favorable consideration of that case was well-grounded. Further, the judge here was merely (and properly) interpreting the no-damages-for-delay clause at issue.  Her ruling neither seeks to impose, nor results in, a new, universally applicable definition of "delay."[10]  In sum, we discern no basis for

_____

[10] Suffolk suggests the present case is controlled by

disturbing either her interpretation of the clause at issue or her related factual findings.

b. "Total cost" claim. Suffolk next challenges the judge's adoption of the "total cost" method for calculating damages as advocated by Central's expert, Broglino.[11] The total cost method "looks to the difference between the amount bid for the work and the actual cost of the work." North Am. Mechanical, Inc. v. Walsh Constr. Co., 132 F. Supp. 3d 1064, 1078 (E.D. Wis. 2015), citing Raytheon Co. v. White, 305 F.3d 1354, 1365 (Fed. Cir. 2002). Due to several concerns, courts have suggested that the method be used only "as a last resort . . . , in those extraordinary circumstances where no other way to compute damages was feasible and where the trial court employed proper safeguards." Servidone Constr. Corp. v. United

---

Reynolds Bros. v. Commonwealth, 412 Mass. 1 (1992), where the court, in enforcing a no-damages-for-delay clause, found "no significant distinction between the hindrances and interferences to which Reynolds point[ed] and the alleged delay in the start of the project and delays caused by the work of other contractors." Id. at 7-8. Regardless of the language it chose to describe its damages, however, the plaintiff in Reynolds sought to recover for delay, not, as is the case here with Central, the expense of having to increase its workforce to avoid delay. In addition, the Commonwealth in Reynolds, unlike Suffolk here, did not materially breach the no-damages-for-delay clause, thereby precluding its own enforcement of that provision. The present case, therefore, is distinguishable.

[11] Suffolk also had a damages expert, but chose not to call him as a witness at trial.

States, 931 F.2d 860, 861-862 (Fed. Cir. 1991).[12] Thus, a plaintiff seeking to utilize the method "must prove that (1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses."[13] Raytheon Co., 305 F.3d at 1366 (quotation omitted). Although Suffolk does not challenge per se the use of the total cost method, it nonetheless maintains that the judge erred in finding that Central satisfied the first and fourth elements. We disagree.

As to the first element, Broglino testified that the total cost method was, in his opinion, the only method by which one could calculate the loss of labor productivity in this case. He testified that he had considered use of the preferred "measured mile" method for calculating such damages,[14] but that the type of

_____

[12] No Massachusetts appellate court appears to have addressed the use of the total cost method.

[13] There is also a "modified total cost" method, which is simply "the total cost method adjusted for any deficiencies in the contractor's proof in satisfying the [four elements]." Propellex Corp. v. Brownlee, 342 F.3d 1335, 1339 (Fed. Cir. 2003), citing Servidone, 931 F.2d. at 861-862. The elements are the same for both methods. See Raytheon Co., 305 F.3d at 1365-1366; Propellex, 342 F.3d at 1339.

[14] "A measured mile analysis requires quantifying the time it took [the subcontractor] to complete work in areas that were 'impacted' by conditions that caused it to be inefficient and

detailed records necessary to do so did not exist, nor would Central have been expected to maintain them. The judge, as indicated above, found Broglino's testimony credible, a finding to which we defer. See Demoulas, 424 Mass. at 509 (noting that Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974], "requires that 'due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses'"). Nor do we see a basis for disturbing her ruling, based on Broglino's testimony, that the pervasive nature of Suffolk's breaches made it impossible to identify an adequate baseline for assessing damages on an event-by-event basis.[15]

Meanwhile, the fourth element of the total cost analysis attempts to address concerns of causation, requiring a plaintiff to remove from the calculation any damages attributable to its

---

compare that with the time it took [the subcontractor] to complete essentially identical work in areas that were 'unimpacted' by such conditions." North Am. Mechanical, 132 F. Supp. 3d at 1079.

[15] Suffolk suggests that Central proved it was possible when, at Suffolk's suggestion, it initially submitted a request for an equitable adjustment, documented ASI by individual ASI. At the time, Suffolk and the MSCBA both rejected the request, citing a purported lack of supporting documentation or information. As an initial matter, therefore, it is telling that Suffolk did not reject that request due to the no-damages-for-delay clause. In any event, the judge was presented with extensive evidence regarding that prior request and impliedly found that it failed to adequately capture Central's damages, and we see no grounds to conclude that such a finding was clearly erroneous.

own acts or omissions, or those of a third party for whom the defendant is not responsible. See Raytheon Co., 305 F.3d at 1366. However, although Suffolk purports to object to the judge's findings on the fourth element, as none of the alleged deficiencies now cited by Suffolk concerns that element, there is no basis for disturbing the judge's ruling in that regard.

4. Central's cross appeal. In addition to seeking damages for loss of productivity, Central sought to recover $83,538 from Suffolk for unpaid CORs. The judge rejected that claim, determining that Central did not establish that Suffolk had been paid for those amounts by the MSCBA, a condition precedent contained in what is commonly referred to as the "pay if paid" clause of the subcontract.[16] While Central suggests that such clauses are looked upon with disfavor, it does not maintain that the clause is unenforceable. Instead, it argues that the judge's finding was clearly erroneous because (1) some of the unpaid CORs were owed directly by Suffolk and not the MSCBA as "pass through" expenses and (2) Suffolk had in fact been paid

---

[16] The clause provides, in pertinent part:

"Within ten (10) days after Contractor's receipt of good funds from Owner, Contractor shall pay to Subcontractor ninety percent (90%) of the value of the Work properly performed during the previous month. Receipt of progress and/or final payments by the Contractor from the Owner with respect to the Work shall be, in each instance, a condition precedent to the Subcontractor's rights to receive payment from Contractor."

for some of the CORs by the MSCBA.  At trial, however, Central only offered the subject CORs and testimony to the effect that it had not received payment for them.  The record, therefore, is insufficient to substantiate Central's arguments, never mind a conclusion that the judge erred in her findings.

5.  Attorney's fees.  The judge's awarded Central $471,682 in attorney's fees pursuant to G. L. c. 149,§ 29.  Suffolk claims that it was wrongfully denied discovery prior to the entry of that award.  "In general, discovery matters are committed to the sound discretion of the trial judge [and will be upheld] unless the appellant can demonstrate an abuse of discretion that resulted in prejudicial error."  Buster v. George W. Moore, Inc., 438 Mass. 635, 653 (2003).  The discovery Suffolk sought here focused on whether Central had been billed, and had paid, the fees it was seeking to recover.[17]  The reasonableness of an application for attorney's fees, however, does not turn on whether the fees requested were billed for and/or paid, "but, rather, on what [the attorney's] services were objectively worth."  Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629 (1978).  Given that the discovery requested was not essential to the ultimate issue to be decided, it was

---

[17] Central sought $622,300 in attorney's fees and $24,628.94 in disbursements.  The judge reduced the fees by twenty-five percent and declined to award any amount for disbursements.

not an abuse of discretion to deny it. Additionally, the judge was aware of the discovery Suffolk was seeking and that Central had not submitted any legal invoices or evidence of payment in support of its fee application. The issue Suffolk sought to raise, therefore, was before the court for consideration. Consequently, even if the denial of the discovery amounted to an abuse of discretion, Suffolk was not prejudiced thereby.

Suffolk further claims that the judge erred by declining to hold a hearing on the fee application. A party typically is entitled to a hearing regarding the reasonableness of an attorney's fee request, but only if it requests one. See Manganaro Drywall, Inc. v. White Constr. Co., 372 Mass. 661, 666 (1977). The only reference Suffolk made to a hearing was buried in the conclusion of its seventeen-page opposition to the fee application, and even that did not amount to a "request" for a hearing.[18] A hearing, therefore, was not required. Moreover, Suffolk submitted a lengthy opposition to the fee application, and the judge's decision awarding the fees reflects that she not only considered Suffolk's objections, she adopted some of them.[19]

---

[18] The judge intimated in an order establishing the procedure for the fee application that a hearing would be held. Nonetheless, Suffolk still should have requested a hearing if it intended to insist on one.

[19] Suffolk filed a motion for reconsideration of both the fee award and denial of discovery, which was reviewed and denied by a second Superior Court judge due to the trial judge's

Indeed, Suffolk has not identified any objection that it was prevented from raising as a result of the absence of a hearing. Accordingly, Suffolk has not established that it was prejudiced thereby.[20]

Central's entitlement to attorney's fees, which arises from G. L. c. 149, § 29, extends to the appellate process. See Manganaro Drywall, 372 Mass. at 667. Central has included a request for such fees in its brief. If the parties cannot agree upon an appropriate amount of fees, they shall follow the process prescribed in Fabre v. Walton, 441 Mass. 9, 10-11 (2004). Central shall submit its request to this court, with supporting materials, within fourteen days of the date of the rescript. Suffolk and the surety defendants shall submit any opposition within ten days thereafter.

> Judgment and amended judgment for attorney's fees affirmed.

---

retirement. The second judge found that the trial judge "gave full and careful consideration to each of the issues [Suffolk] presented." We agree.

[20] To the extent the parties raise other issues in their briefs, they have not been overlooked. "We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).